*In re* UNION CITY MILK COMPANY.

1. CORPORATIONS—PRINCIPAL AND AGENT—ESTABLISHMENT OF AUTHORITY OF AGENT—BURDEN OF PROOF—ASSIGNMENT FOR BENEFIT OF CREDITORS.

    In assignment for benefit of creditors, the claimant against the assignees has the burden of establishing by competent proof the authority of the agent. of the corporate assignor with whom it dealt in the creation of the alleged liability of the assignor.

2. PRINCIPAL AND AGENT—SCOPE OF AGENCY.

    An agent cannot bind his principal except within the scope of the agency.

3. CORPORATIONS—GENERAL MANAGER—SCOPE OF AUTHORITY.

    The ostensible authority of the general manager of a corporation is limited to the conduct of the business for which the corporation was formed.

4. SAME—GENERAL MANAGER—GUARANTY—ARTICLES OF INCORPORATION—BOARD OF DIRECTORS—PRESIDENT.

    The authority of the general manager of a corporation, engaged in the creamery business, did not extend to the execution of a contract of guaranty on a promissory note given by the purchaser of 2 of its milk trucks and 2 milk routes to a bank, notwithstanding the statement of the president of the

REFERENCES FOR POINTS IN HEADNOTES

[1] 2 Am Jur, Agency, § 442.
[2] 2 Am Jur, Agency, § 346.
[3] 13 Am Jur, Corporations, §§ 890, 891, 915.
[4] 13 Am Jur, Corporations, § 922.
[4, 6, 7, 10] 2 Am Jur, Agency, §§ 445, 449; 13 Am Jur, Corporations, § 946.
[5, 6, 7, 10] Competency, as against principal, of statements by agent to prove scope, as distinguished from fact, of agency. 3 ALR2d 598.
[8] 2 Am Jur, Agency, §§ 176–178; 13 Am Jur, Corporations, § 922.
[9] 2 Am Jur, Agency, § 449.
[11] 3 Am Jur, Appeal and Error, § 812 *et seq.*

corporation that such general manager had such authority, where there is nothing in the record to indicate that the board of directors had approved such action or knew of it and the articles of incorporation neither specifically nor impliedly referred to the execution of guaranty contracts; nor did the statement create an estoppel on the part of the corporation to deny liability on the guaranty.

5. SAME—THIRD PARTIES—STATEMENTS OF AGENT AS TO AUTHORITY.
   A party dealing with the agent of a corporation is not entitled to rely on the statement of such agent as to the scope of his authority in a matter not within the purpose of the corporation's business as set forth in its articles.

6. PRINCIPAL AND AGENT—PROOF OF AGENCY.
   Agency may not be established by proof of declarations by the supposed agent.

7. SAME—SCOPE OF AGENCY—EVIDENCE.
   The extent of an agency may not be established by testimony as to agent's acts and conduct not within the actual or implied scope of the powers granted to him by his principal.

8. SAME—GUARANTY—EXISTENCE OF GENERAL AGENCY.
   The authority to bind the principal by a contract of guaranty or suretyship is not ordinarily to be implied from the existence of a general agency.

9. SAME—EXECUTION OF INSTRUMENTS—SUBSEQUENT EVENTS—PROOF OF APPARENT AUTHORITY.
   Matters occurring after the execution of an instrument upon which action was commenced were not entitled to consideration as tending to show that the plaintiff was thereby induced to rely on the apparent authority of the agent who executed it.

10. SAME—EXECUTION OF INSTRUMENTS—GUARANTY—PROOF OF AUTHORITY OF AGENT.
    Whether or not an agent has authority to execute an instrument binding his principal as guarantor of a loan by a third person to a purchaser of property from the principal must be determined upon the record made.

11. APPEAL AND ERROR—ASSIGNMENT FOR BENEFIT OF CREDITORS—PREFERENCE—QUESTIONS REVIEWABLE.
    Whether or not trial court was in error in allowing a preference to claims of milk haulers and of farmers selling milk to creamery corporation, assignor for benefit of creditors, is not determined on appeal from disallowance of claim on contract of guaranty, executed by the general manager of the

creamery, but not within the scope of his express or apparent authority and not shown to have been with the approval or knowledge of the board of directors.

Appeal from Branch; Arch (Charles O.), J. Submitted December 16, 1951. (Docket No. 90, Calendar No. 45,019.) Decided March 1, 1951.

In the matter of the Union City Milk Company's assignment for benefit of creditors. E. Hill & Sons State Bank filed claim. Claim disallowed. Claimant appeals. Affirmed.

*Roy H. Hagerman* and *Caleb F. Enix,* for claimant.

*Harold J. Ashdown* and *James W. Mackey,* for assignees.

CARR, J. The facts disclosed by the record in this case appear in certain exhibits, and in statements prepared by counsel representing the parties to the case which were submitted on stipulation to the circuit judge for his consideration. On November 19, 1947, James W. Patterson and Frances C. Patterson, his wife, negotiated a loan from E. Hill & Sons State Bank, Colon, Michigan, in the sum of $7,231.82. A note evidencing the obligation was executed, payable in instalments with interest at 6 per cent. per annum. By way of security Mr. and Mrs. Patterson gave a chattel mortgage on 2 described trucks and 2 milk routes of the Union City Milk Company, a corporation herein referred to as the milk company. An assignment was executed by Mr. Patterson authorizing the milk company to make certain payments to the bank out of his bi-monthly pay checks. Payments substantially reducing the amount of the indebtedness were made on the note.

At the time of the transaction referred to, the manager of the milk company was R. K. Cooney, the father of Mrs. Patterson. Presumably for the purpose of enabling his son-in-law and daughter to obtain the loan from E. Hill & Sons State Bank, he executed the following instrument:

"Colon, Michigan
Nov. 19th, 1947

"We hereby declare ourselves to guaranty both principal and interest of the loan of James W. Patterson and Frances M. Patterson for $7,231.82 to E. Hill & Sons State Bank, Colon, Michigan dated November 19, 1947 for 37 months.

"It is our understanding that on notice of default from said bank that we will pay up said loan within 30 days after receipt of notice of default. In case that guaranty is exercised it is understood that we are to take the place of the mortgagee and take over what security is offered in this case a 1947 Ford truck with milk body and milk route No. 600 and a 1944 Chevrolet 1-½ ton truck with milk body and route # 1400.

"This guaranty is signed by an officer having legal right to bind the company thru authorization of the board of directors.

"UNION CITY MILK CO.
"S/R. K. COONEY, Mgr."

Before the loan was finally closed an officer of the bank telephoned the president of the milk company, who was also a director, and was, it appears, "given to understand" that Mr. Cooney was authorized to execute the guaranty above quoted. There is nothing in the record to indicate that the other members of the board of directors had any knowledge whatever of the guaranty, or that the board had ever authorized the manager to execute any such undertaking. The books of the corporation did not show the existence of the potential liability.

On the 8th of March, 1949, the milk company, acting by its directors and stockholders, executed an assignment for the benefit of its creditors, covering all of the property owned by it. This action was taken in accordance with the provisions of CL 1948, § 642.1 *et seq.* (Stat Ann 1943 Rev § 27.2417 *et seq.*), and the assignment was duly filed on March 14th following its execution. E. Hill & Sons State Bank filed its claim based on the contract of guaranty above noted for the balance due on the Patterson note.

The assignees contested the claim, contending that the undertaking was not binding on the milk company. The circuit judge concluded that the assignees were right in their position, and entered an order accordingly. The claimant has appealed, insisting that the order of disallowance was erroneous, and further that the court was in error in classifying as preferred the claims filed by milk haulers and by farmers who sold milk to the company. The principal question raised on appeal has reference to the authority of Mr. Cooney to bind the milk company by the instrument that he executed to the appellant. The burden rested on the claimant bank to establish by competent proof the authority of the agent with whom it dealt. In commenting on a situation somewhat analogous to that in the case at bar, it was said in *Mazanec* v. *Gogebic Timber & Lumber Co.,* 313 Mich 117, 121:

"It conclusively appears from this record that plaintiff's alleged right of recovery is based solely upon an agreement which plaintiff claims was made between him and Poundstone. The latter as defendant's resident manager at Watersmeet was merely an agent of defendant; and it is elementary that as such agent he could not bind his principal except within the scope of his agency. There is no testimony in this record which would justify the conclu-

sion that Poundstone had any power to bind defendant by any agreement except such as was within the scope of his authority as resident manager of defendant. The burden of establishing such authority was on plaintiff. *Goodspeed* v. *MacNaughton, Greenawalt & Co.,* 288 Mich 1, and *Selected Investments Co.* v. *Brown,* 288 Mich 383."

It does not appear that the manager of the company had at any time been authorized by its board of directors to execute a contract of guaranty in connection with its business. Neither does it appear that he had previously undertaken to exercise any such authority. The purposes of the corporation were set forth in its articles, as amended July 26, 1946, in the following language:

"To manufacture, produce, purchase or otherwise acquire, sell or otherwise dispose of, import, export, distribute, deal in and with, whether as principal or agent, goods, wares, merchandise and materials of every kind and description, and more particularly, but without in any way limiting the generality of the foregoing purposes, to buy, sell, manufacture, process, distribute and generally deal in and with, whether at wholesale or retail, butter, eggs, milk, cream, cheese and food and creamery products of every kind and description; to manufacture, buy, sell and generally deal in and with all kinds of equipment, mechanical or mercantile specialties, devices, tools, implements, instruments and apparatus and machines used or useful in connection therewith, and to carry on any business or businesses incident to any of the foregoing with all the powers conferred upon corporations by the laws of the State of Michigan now or hereafter in effect."

It will be noted that there is nothing in the foregoing statement referring either specifically or by necessary implication to the execution of contracts of guaranty. Whether the corporation by action of

its board of directors might have bound itself by such an undertaking does not require discussion. The ostensible authority of the general manager was limited to the conduct of the business for which the corporation was formed. The execution of contracts of guaranty and suretyship, at least insofar as this record discloses, were not incidents of that business. Apparently claimant was uncertain concerning the matter, and therefore contacted the president of the milk company. The statement in the record concerning this occurrence is in substance that the president stated that the manager was authorized to execute the particular undertaking in question. No claim is made that there was any representation as to the general authority of the manager in such respect. We may assume that the representation was made in good faith, quite possibly due to a misunderstanding on the part of the president. There is no showing in the record as to the powers and duties of the president of the milk company and the fact remains, insofar as the record before us discloses, that the general manager was not either expressly or impliedly authorized to bind the corporation by a guaranty of payment of the Patterson note. The statement of the president may not be given the effect of validating the act of the manager, or of creating an estoppel on the part of the corporation to deny liability. Appellant did not obtain, or seek, assurance from, or approval by, the board of directors.

Attention is called by appellant to the declaration in the contract of guaranty as to the authority of the manager to execute it, such statement being in effect that he had such right because of authorization by the board of directors. Such statement indicates a recognition that the parties at the time considered express authority requisite to a binding guaranty. Appellant was not entitled to rely on the statement of the manager with reference to the authority grant-

ed to him. Agency may not be established by proof of declarations by the supposed agent. *Miskiewicz* v. *Smolenski,* 249 Mich 63. Nor may the extent of the authority of an agent be shown by testimony as to his acts and conduct not within the actual or implied scope of the powers granted to him by his principal. *Cutler* v. *Grinnell Brothers,* 325 Mich 370.

Authority to bind the principal by a contract of guaranty or suretyship is not ordinarily to be implied from the existence of a general agency. In 2 CJS 1269 it is said:

"Such a contract is extraordinary and unusual and so not normally within the powers accruing to an agent by implication, however general the character of the agency; ordinarily the power exists only if expressly given. Consequently a manager, superintendent, or the like, of business or property cannot ordinarily bind his principal as surety for third persons.

"In the absence of special authority actually or ostensibly empowering him so to do, an agent may not pledge the principal's credit for the debts of others who have assumed to buy or otherwise contract on the principal's credit.

"Where the agent in so contracting exceeds his instructions or the limitations of his authority, of which other party has knowledge or notice, the latter cannot hold the principal as a surety upon any asserted implication or appearance of authority."

In the case at bar it is apparently assumed by counsel that the purpose of the loan to Mr. and Mrs. Patterson was to enable them to purchase the milk routes and the trucks covered by the chattel mortgage, and that Mr. Patterson thereafter operated the routes for some time. It may be inferred that he used the trucks in connection with such operation. However, it does not appear that there was any agreement between himself and the milk company

in any way obligating him to do so. Insofar as this record discloses, he might have discontinued hauling milk. Neither does it appear that the company was actually benefited by the use of property purchased with the proceeds of the loan. Even if such were the case, the fact still remains that appellant failed to show before the trial court that the board of directors had knowledge of the existence of the contract of guaranty.

In view of the factual situation presented here and the claims of the appellant, the decision of this Court in *McBroom* v. *Cheboygan Brewing & Malting Co.,* 162 Mich 323, is particularly in point. There the secretary of the defendant corporation sought to bind it by a contract of guaranty for the payment of the rent of a dwelling and business building to be occupied by a saloon keeper. There was no agreement between the defendant and the saloon keeper that the latter would buy his liquor exclusively from the defendant, or that he would do any other act for its benefit. No express authority had been granted by the board of directors to the secretary to enter into an undertaking of the character in question. In an action thereon it was held that the secretary had no actual or implied power to bind his principal, and judgment for the defendant was affirmed. It was further pointed out that matters occurring after the execution of the instrument on which the suit was brought were not entitled to consideration as tending to show that the plaintiff was thereby induced to rely on the apparent authority of the agent.

*Goldman* v. *Great Lakes Foundry Co.,* 230 Mich. 524, involved, among other issues, an alleged express warranty made by an agent. The trial court refused to admit evidence of the warranty without proof as to the agent's authority. This Court sustained the ruling on the ground that there was no evidence of either actual authority or that a warranty of the

nature in question was a customary incident of a sale of property of the character involved. The reasons for such holding are applicable under the facts in the case at bar.

In *Constantine* v. *Kalamazoo Beet Sugar Co.*, 132 Mich 480, it was held, under the somewhat unusual circumstances involved, that the secretary and manager of the defendant had authority to enter into an undertaking to insure the delivery to defendant of sugar beets that had been partially grown for it under contract. An analogous situation was involved in *Timm* v. *Grand Rapids Brewing Co.*, 160 Mich 371 (27 LRA NS 186), cited by counsel for appellant. These decisions and others of like import are distinguishable on the facts from the case at bar. The instant controversy must be determined on the record before us. Based thereon, it is our conclusion that the action of the trial court was correct.

In view of the finding that plaintiff was not entitled to the allowance of its claim against the assignees of the milk company, it becomes unnecessary to consider the contention of appellant that the trial court was in error in allowing a preference to the claims of milk haulers and of farmers selling milk to the company. Not being an interested party in the disposition of the corporation's assets, appellant is not in position to urge objections based on the allowance of the claims of others. The order of the trial court is affirmed, with costs to appellees.

Reid, C. J., and Boyles, North, Dethmers, Butzel, Bushnell, and Sharpe, JJ., concurred.