ROHE SCIENTIFIC CORPORATION v NATIONAL BANK OF
DETROIT

Docket No. 68889. Submitted December 14, 1983, at Detroit.—Decided
April 2, 1984.

Rohe Scientific Corporation, a manufacturer and seller of ultra-
sound medical diagnostic equipment, delivered to Macomb Con-
tinuing Care Center certain ultrasound equipment, for which
the center agreed to pay approximately $64,000. No payment
was made and, approximately five months later, Rohe com-
menced an action against the center in Macomb Circuit Court
for claim and delivery. The center defaulted and an order for
possession of personal property, entitling Rohe to recover pos-
session of the equipment, was entered on February 21, 1978,
Howard R. Carroll, J. On April 30, 1978, before Rohe could
obtain possession of the equipment, it was seized by the Na-
tional Bank of Detroit, which asserted that it had a security
interest in the equipment as a result of a $20,000 loan to the
center. NBD refused to surrender possession of the equipment,
which had a fair market value of $57,000 at the time, to
plaintiff and announced its intention to sell the equipment.
Rohe filed suit claiming conversion against NBD in Wayne
Circuit Court on June 27, 1978. Rohe then purchased the
equipment from NBD in November, 1978, for $23,662.83 upon
the express condition that such payment would in no way
constitute an acknowledgment that NBD had any legal right,

REFERENCES FOR POINTS IN HEADNOTES

[1] 46 Am Jur 2d, Judgments § 397.
[2] 46 Am Jur 2d, Judgments §§ 518, 529, 532.
[3] 47 Am Jur 2d, Judgments §§ 1197, 1198.
   Doctrine of res judicata as applied to default judgments. 77 ALR2d
   1410.
[4] 18 Am Jur 2d, Conversion § 1.
[5] 18 Am Jur 2d, Conversion §§ 25, 43.
[6] 18 Am Jur 2d, Conversion § 69.
[7, 8] 3 Am Jur 2d, Agency §§ 351, 352, 354, 355.
   29 Am Jur 2d, Evidence § 663.
[9] 3 Am Jur 2d, Agency §§ 71, 72, 350.
[10] 18 Am Jur 2d, Conversion § 82 et seq.

title, or interest in the equipment. In March, 1979, Rohe sold the equipment for $39,000. The court, Roman S. Gribbs, J., held that the order resulting from Rohe's original claim and delivery action against Macomb Continuing Care Center did not grant a right to possession but merely acknowledged that a prima facie case of Rohe's pre-existing right to possession had been made. The court also determined that Rohe did not retain title to the equipment after its delivery to the center and that Rohe did not retain or perfect a security interest in the equipment. The court concluded that Rohe had no possessory or ownership rights in the equipment and thus could not maintain an action for conversion. Rohe's action was dismissed with prejudice. Rohe appeals. *Held:*

1. The order issued in the claim and delivery action against Macomb Continuing Care Center did not preclude defendant from litigating the issue of possession. Defendant was neither party nor privy to that action.

2. The order in the claim and delivery action is entitled to some weight in the determination of possession since Rohe was required to make a prima facie showing that it was entitled to possession. Thus, plaintiff did have some possessory right in the equipment.

3. Defendant's seizure of the equipment was based upon the belief that it had a security interest properly perfected by the filing of a financing statement. However, evidence submitted at trial showed that the financing statement filed by defendant to perfect its security interest was invalid. Therefore, defendant had no interest in the equipment and no right to seize the property and refuse to relinquish it upon Rohe's demand. Defendant's actions constituted conversion.

4. The trial court made no finding of fact on the issue of whether the fair market value of the equipment when Rohe sold it in March, 1979, was $39,000, as Rohe contends. Without such information, the Court of Appeals cannot determine whether Rohe acted with reasonable speed to mitigate its damages. Accordingly, the case is reversed and remanded for a determination of Rohe's damages.

Reversed and remanded.

1. ESTOPPEL — COLLATERAL ESTOPPEL.

The doctrine of collateral estoppel bars the relitigation of issues which have been actually determined in a prior lawsuit between parties or their privies.

2. Estoppel — Collateral Estoppel — Parties — Privies.

Only parties to a former judgment or their privies may take advantage of or be bound by the former judgment; a party is one who is directly interested in the subject matter and had a right to make defense or to control the proceedings and to appeal from the judgment; a privy is one who, after rendition of the judgment, has acquired an interest in the subject matter affected by the judgment through or under one of the parties, as by inheritance, succession, or purchase.

3. Estoppel — Collateral Estoppel — Default Judgments.

Collateral estoppel applies to default judgments; however, the default judgment is conclusive only as to those matters essential to support the judgment.

4. Conversion — Personal Property.

A conversion is a distinct act of dominion wrongfully exerted over another's personal property.

5. Conversion — Personal Property.

A conversion may be committed by, *inter alia,* intentionally dispossessing another of a chattel or by refusing to surrender a chattel on demand.

6. Conversion — Privilege — Defenses.

Liability for conversion does not arise if the actor is privileged to dispossess another of the chattel.

7. Agency — Scope of Authority — Agent's Declarations.

Agency may not be established by proof of declarations by the supposed agent, nor may the extent of the authority of an agent be shown by testimony as to his acts and conduct not within the actual or implied scope of the powers granted to him by his principal.

8. Agency — Scope of Authority — Acts of Principal.

The authority of one person to contract for another must be determined from or by acts of his principal and cannot be proved by admissions or statements of the alleged agent.

9. Agency — Scope of Authority — Unlawful Activity of Agent.

It is presumed that, when a purported agent is shown to have been acting outside the scope of the law, he was not acting within the scope of his duties for the purported principal.

10. CONVERSION — DAMAGES.
> The measure of damages for conversion is the market value at the time of conversion.

*Cross, Wrock, Miller & Vieson* (by *Jonathon S. Taub),* for plaintiff.

*Martin McGaffey* and *John F. Fellrath, Jr.,* for defendant.

Before: DANHOF, C.J., and ALLEN and M. E. DODGE,* JJ.

DANHOF, C.J. Plaintiff presently appeals as of right the trial court's dismissal with prejudice of plaintiff's action in conversion against defendant. Plaintiff is the manufacturer and seller of ultrasound medical diagnostic equipment. On August 25, 1977, plaintiff delivered to Macomb Continuing Care Center (MCCC) certain ultrasound equipment. MCCC agreed to pay plaintiff approximately $64,000 following delivery of the equipment. No amounts were paid by MCCC and on February 1, 1978, plaintiff commenced an action against MCCC in the Macomb County Circuit Court for claim and delivery. MCCC defaulted and on February 21, 1978, an order for possession of personal property was entered, entitling plaintiff to recover possession of the equipment.

On April 30, 1978, before plaintiff could obtain possession of the property, the equipment was seized by defendant. The fair market value of the equipment at the time of the seizure by defendant was $57,000. Defendant refused to surrender possession of the equipment to plaintiff and announced its intention to sell the equipment. On November 10, 1978, plaintiff purchased the equipment from defendant for $23,662.83 upon the ex-

---

* Circuit judge, sitting on the Court of Appeals by assignment.

press condition that such payment would in no way constitute an acknowledgment that defendant had any legal right, title or interest in the equipment. In March, 1979, plaintiff sold the equipment for $39,000.

Plaintiff filed the instant action for conversion against defendant on June 27, 1978. Defendant asserted at trial that it had a security interest in the equipment resulting from a $20,000 loan to MCCC. The trial judge held that the order resulting from plaintiff's original claim and delivery action against MCCC did not grant a right to possession, but merely acknowledged that a prima facie case of plaintiff's pre-existing right to possession had been made. The trial court determined that plaintiff did not retain title to the equipment after its delivery to MCCC and that plaintiff did not retain or perfect a security interest in the equipment. The court concluded that plaintiff had no possessory or ownership rights in the equipment and thus could not maintain an action for conversion. Plaintiff's action was dismissed with prejudice on December 13, 1982.

On appeal, plaintiff initially contends that the order for possession of personal property entered in the claim and delivery action against MCCC granted plaintiff a right to possession of the equipment as against defendant, which defendant was collaterally estopped from contesting. Defendant denies that the order was binding on it because it was neither a party nor a privy to the prior action.

The doctrine of collateral estoppel bars the relitigation of issues which have been actually determined in a prior lawsuit between parties or their privies. *Darin & Armstrong v Ben Agree Co,* 88 Mich App 128; 276 NW2d 869 (1979), *lv den* 406 Mich 1007 (1979). The Supreme Court has defined "party" and "privy" as follows:

" 'Under the requirement of privity, only parties to the former judgment or their privies may take advantage of or be bound by it. * * * A party in this connection is one who is "directly interested in the subject matter, and had a right to make defense, or to control the proceedings, and to appeal from the judgment." * * * A privy is one who, after rendition of the judgment, has acquired an interest in the subject matter affected by the judgment through or under one of the parties, as by inheritance, succession, or purchase.' " (Citations omitted.) *Howell v Vito's Trucking & Excavating Co,* 386 Mich 37, 43; 191 NW2d 313 (1971), citing *Bernhard v Bank of American National Trust & Savings Ass'n,* 19 Cal 2d 807, 811; 122 P2d 892 (1942).

Collateral estoppel applies to default judgments; however, the default judgment is conclusive only as to those matters essential to support the judgment. *DAIIE v Higginbotham,* 95 Mich App 213, 219; 290 NW2d 414 (1980), *lv den* 409 Mich 919 (1980).

We agree with defendant that it was neither a party nor a privy to the first action by plaintiff against MCCC. Defendant's interest in the equipment arose after it made the loan to MCCC and perfected its security interest in the property. These events occurred in, approximately, October, 1977, long before judgment was entered for plaintiff in the claim and delivery action. Defendant therefore does not fall within the Supreme Court's definition of a "privy", which requires that the interest be obtained after rendition of the judgment. We accordingly reject plaintiff's contention that the claim and delivery order precluded defendant from litigating the issue of possession.

Our holding that the order for possession was not dispositive in the instant case does not mean that we find the order to be entitled to no weight in the determination of possession. To obtain the order for possession plaintiff was required to make

a prima facie showing that it was entitled to possession. MCL 600.2106; MSA 27A.2106. The necessary conclusion is that plaintiff had *some* possessory rights in the equipment, having shown a court of competent jurisdiction that it was entitled to possession over MCCC, the party then in actual control of the equipment.

A conversion is a distinct act of dominion wrongfully exerted over another's personal property. *Attorney General v Hermes,* 127 Mich App 777, 786; 339 NW2d 545 (1983). The Supreme Court has held that "[a] conversion may be committed by (a) intentionally dispossessing another of a chattel, * * * [or] (g) refusing to surrender a chattel on demand". *Thoma v Tracy Motor Sales, Inc,* 360 Mich 434, 438; 104 NW2d 360 (1960). Liability for conversion does not arise if the actor is privileged to dispossess another of the chattel. *Thoma, supra.* If defendant's right to possession was greater than that of plaintiff's, plaintiff could not maintain an action for conversion.

Defendant's seizure of the equipment was based upon the belief that it had a security interest properly perfected by the filing of a financing statement. MCL 440.9203, 440.9302; MSA 19.9203, 19.9302. At trial, defendant produced a financing statement signed by Russell Scarborough for MCCC. In order to validly bind MCCC to the chattel mortgage signed, Scarborough had to be MCCC's authorized agent to sign the purported security agreement. MCL 440.9105(1)(d); MSA 19.9105(1)(d); see also White & Summers, *Handbook of the Law Under the Uniform Commercial Code* (West, 2d ed, 1980), p 913. Defendant had the burden of showing Scarborough's agency at trial. *In re Union City Milk Co,* 329 Mich 506, 510; 46 NW2d 361 (1951).

At trial, defendant attempted to show that Scarborough had "apparent authority" to enter into the security agreement on behalf of MCCC. In *Union City Milk Co, supra,* p 513, the Supreme Court noted:

"Agency may not be established by proof of declarations by the supposed agent. * * * Nor may the extent of the authority of an agent be shown by testimony as to his acts and conduct not within the actual or implied scope of the powers granted to him by his principal." (Citations omitted.)

The authority of one person to contract for another must be determined from or by acts of his principal and cannot be proved by admissions or statements of the alleged agent. *Harrigan & Reid Co v Hudson,* 291 Mich 478, 484; 289 NW 222 (1939).

Defendant introduced evidence of documents submitted by Scarborough in support of its position that he was authorized by MCCC to enter into the security agreement. The trial court found that each of the nine documents given to defendant's loan officer was fraudulent. None of the documents submitted by Scarborough was a genuine manifestation by MCCC of Scarborough's authority. None of these documents was sufficient to show apparent authority, even assuming that defendant relied upon them in good faith. 2A CJS, Agency, § 161, pp 798-799; *Rice v Peninsular Club of Grand Rapids,* 52 Mich 87; 17 NW 708 (1883). In addition, the evidence at trial indicated that Scarborough was convicted on federal charges for this fraudulent transaction with defendant. When a purported agent is shown to have been acting outside the scope of the law, it is presumed that he was not

acting within the scope of his duties for the purported principal. 3 CJS, Agency, § 493, p 391.

The proofs at trial completely failed to show that Scarborough had the authority to enter into the security agreement with defendant. Lacking a signature by the debtor, the financing statement filed by defendant to perfect its security interest was invalid. MCL 440.9105(1)(d), 440.9302; MSA 19.9105(1)(d), 19.9302. Defendant therfore had no interest in the equipment and no right to seize the property and refuse to relinquish it upon plaintiff's demand. In light of the claim and delivery order granting plaintiff possession of the equipment, and the absence of defendant's right to the equipment, defendant's seizure and refusal to deliver the equipment on demand constituted conversion.

The only remaining issue is that of damages. The measure of damages for conversion is the market value at the time of conversion. *Embrey v Weissman,* 74 Mich App 138, 144; 253 NW2d 687 (1977). The trial court here determined the fair market value of the equipment at the time defendant took possession to be $57,000. Plaintiff purchased the equipment from defendant on November 10, 1978, for $23,622.83. Plaintiff sold the equipment in March, 1979, for $39,000. Plaintiff presented testimony that the price of the equipment declined because of a technological change in this type of equipment. Since the trial court made no finding of fact on this issue, we are unable to determine whether plaintiff acted with reasonable speed to mitigate its damages. We accordingly remand this case for a determination of plaintiff's damages.

Reversed and remanded. Costs to plaintiff.