# STATE OF MICHIGAN

# COURT OF APPEALS

MICHAEL ANDREWS, d/b/a MONTGOMERY
ENTERPRISES,

               Plaintiff/Counter-Defendant-
               Appellant/Cross-Appellee,

v

THOMAS J. MOYLE CONSTRUCTION, INC.,

               Defendant/Counter-Plaintiff-
               Appellee/Cross-Appellant,

and

WALMART STORES, INC., a/k/a WALMART
REAL ESTATE, and LIBERTY MUTUAL
INSURANCE COMPANY,

               Defendants.

UNPUBLISHED
November 20, 2014

No. 315091
Chippewa Circuit Court
LC No. 10-011098-CK

Before: BOONSTRA, P.J., and DONOFRIO and GLEICHER, JJ.

PER CURIAM.

In this appeal by right, plaintiff challenges the trial court's order granting defendant Thomas J. Moyle Construction, Inc.'s ("defendant") renewed motion for summary disposition pursuant to MCR 2.116(C)(10). In defendant's cross appeal, it challenges the trial court's dismissal of its counterclaim, following a bench trial, and the court's denial of its request for attorney fees under MCL 570.1118(2) or MCL 600.2591(3). We affirm.

## I. PERTINENT FACTS AND PROCEDURAL HISTORY

Plaintiff, Michael Andrews, filed this action to recover proceeds from the sale of gravel, the rights to which plaintiff alleges were assigned to him by Bill Montgomery, on behalf of

Montgomery Enterprises, Inc. ("MEI")[1], as security for a loan of $200,000. The gravel was mined from a pit owned by Stockpile Resources, L.L.C. ("Stockpile"), a company owned by Bill Montgomery's brother, Dr. Ben Montgomery (or by his trust). Plaintiff maintains that the gravel was used in a construction project at a Walmart store in Sault Ste. Marie, Michigan.

Defendant was the general contractor for the Walmart project. It entered into a subcontract with Ferrari Construction Materials, Inc. ("Ferrari") for site work on the project, including the supply of gravel. Apparently, and while the details are sketchy, Ferrari in turn orally leased the mineral rights in the pit.[2] Because Ferrari lacked the capacity and resources to crush and process the raw gravel product, it subcontracted that work back to defendant. The crushing was completed in 2008 and the gravel was piled at Stockpile's pit for later delivery to the project site. About 60 percent of the gravel was delivered to the project site before the pit closed for the winter; the remaining gravel remained stockpiled at the pit. In January 2009, Ferrari defaulted on its subcontract with defendant, and defendant had to assist Ferrari in completing the contact, including transporting the gravel to the project site. In March 2009, Stockpile locked Ferrari out of the pit over an unrelated dispute. In a separate action, Ferrari sued Stockpile for possession of the remaining gravel stored at the pit for use in the Walmart project. Ferrari eventually obtained a temporary restraining order enjoining Stockpile from selling any assets and allowing Ferrari to remove certain equipment. Ferrari and Stockpile stipulated that gravel could be removed and transported to the Walmart construction site. Ferrari's president later executed an affidavit certifying that Ferrari had been paid in full for all services in connection with the Walmart project.

In June 2010, plaintiff filed this action against defendant and Walmart. Plaintiff alleged that defendant obtained gravel from the pit for use in the Walmart project. Plaintiff maintained that this gravel was outside defendant's subcontract with Ferrari, and that defendant had not paid for the gravel. Plaintiff alleged entitlement to the proceeds of the unpaid gravel pursuant to his assignment from Bill Montgomery. Plaintiff brought claims against defendant for breach of contract and violation of the builder's trust fund act, MCL 570.151 *et seq*. Plaintiff also brought a lien foreclosure claim against Walmart. Plaintiff later filed an amended complaint adding a claim against Liberty Mutual Insurance Company ("Liberty Mutual") for recovery under a security bond that it issued for the Walmart project.

---

[1] Plaintiff captions this action as "Michael Andrews d/b/a Montgomery Enterprises." Yet, the record does not reflect that Andrews does business as "Montgomery Enterprises." Rather, the record reflects that plaintiff claims to have loaned money to MEI or its principal, Bill Montgomery, and to have received an assignment of an interest in the proceeds of gravel sales in return for that loan.

[2] The record reflects that, for reasons that are unclear, many of Ferrari's lease payments, particularly in the earlier period of the lease arrangement, were made payable to Bill Montgomery, rather than to Stockpile, and that at least some of those payments were deposited into an account denominated as "Montgomery AGG." Whether those lease payments made their way to Stockpile, as the owner of the gravel pit, is unknown.

Defendant defended the claims against Walmart and Liberty Mutual pursuant to indemnity clauses in its agreements with those parties. The claims against Walmart and Liberty Mutual were dismissed on summary disposition and are not at issue in this appeal. Defendant filed a counterclaim against plaintiff in which it alleged claims for slander of title and injurious falsehood, and it also sought recovery of its attorney fees and costs on the basis that plaintiff's action was frivolous, and that plaintiff's construction lien claim against Walmart, which defendant was required to defend, was vexatious.

The trial court ultimately granted defendant's motion for summary disposition of plaintiff's claims for breach of contract and violation of the builder's trust fund act, pursuant to MCR 2.116(C)(10). The court thereafter conducted a bench trial on defendant's counterclaim for slander of title and injurious falsehood, following which it dismissed those claims. The court also denied defendant's request for costs and attorney fees under MCL 570.1118(2) (vexatious construction lien) or MCL 600.2591(3) (frivolous action).

## II. PLAINTIFF'S APPEAL

Plaintiff argues that the trial court erred in granting defendant's motion for summary disposition under MCR 2.116(C)(10), and dismissing his claims for breach of contract and violation of the builder's trust fund act. This Court reviews de novo a trial court's ruling on a motion for summary disposition. *Spiek v Michigan Dep't of Transp*, 456 Mich 331, 337; 572 NW2d 201 (1998). A motion for summary disposition under MCR 2.116(C)(10) tests the factual support for a claim. *Id*. In reviewing a motion under MCR 2.116(C)(10), a court must consider the pleadings and any affidavits, depositions, admissions, and other documentary evidence submitted by the parties, and view the evidence in the light most favorable to the party opposing the motion. MCR 2.116(G)(5); *Quinto v Cross & Peters Co*, 451 Mich 358, 362; 547 NW2d 314 (1996). Summary disposition is appropriate if there is no genuine issue regarding any material fact, and the moving party is entitled to judgment as a matter of law. *Id*.

We hold that summary disposition was properly granted in favor of defendant because plaintiff failed to submit any evidence showing (1) that he had any contract with defendant, or (2) that he had acquired a valid property interest in the gravel (or its proceeds) that could be enforced against defendant.

### A. EXISTENCE OF CONTRACT

Plaintiff brought this action against defendant to recover proceeds allegedly due under a contract. Both of his asserted claims—breach of contract and violation of the builder's trust fund act—are premised on a contractual obligation. A necessary element of a breach of contract claim is the existence of a contract. See *Pawlak v Redox Corp*, 182 Mich App 758, 765; 453 NW2d 304 (1999). A claim for recovery under the builder's trust fund act also requires the existence of a contract with a contractor or subcontractor of a construction project. See MCL 570.151 and MCL 570.152; *Livonia Building Materials Co v Harrison Construction Co*, 276 Mich App 514, 518; 742 NW2d 140 (2007).

Although plaintiff alleged an "express and/or implied contract" between plaintiff and defendant for the sale of gravel, plaintiff failed to provide any evidence in support of that

allegation. Rather, the submitted evidence showed that defendant contracted with Ferrari to supply gravel for the Walmart project. Plaintiff did not present any evidence of a contract between himself and defendant for the purchase of any gravel. The basis for plaintiff's claim instead was that he had received an oral assignment of an interest in the receivables from the sale of the gravel product. That assignment supposedly came from a third party, Bill Montgomery.[3] The existence of such an assignment does not establish a contract between plaintiff and defendant, and plaintiff neither alleged nor showed that defendant was a party to his alleged assignment from Bill Montgomery. As the trial court observed, "We have nothing connecting [plaintiff] on any level except him just suing."

Plaintiff acknowledges that a contract for the sale of minerals to be removed from realty is a contract for the sale of goods governed by the UCC. MCL 440.2107(1). Section 2201(1) of the UCC, MCL 440.2201(1), provides:

> Except as otherwise provided in this section, a contract for the sale of goods for the price of $1,000.00 or more is not enforceable by way of action or defense unless there is a writing sufficient to indicate that a contract for sale has been made between the parties and signed by the party against whom enforcement is sought or by his or her authorized agent or broker.

Plaintiff has produced no evidence satisfying this requirement of a writing. Instead, plaintiff contends that the UCC's requirement of a writing is "relatively easy to avoid" under MCL 440.2201(2) and (3)(c).

> MCL 440.2201(2) provides:

> Between merchants, if within a reasonable time a writing in confirmation of the contract and sufficient against the sender is received and the party receiving it has reason to know its contents, it satisfies the requirements of subsection (1) against the party unless written notice of objection to its contents is given within 10 days after it is received.

MCL 440.2201(3)(c) further provides that a contract "that does not satisfy the requirement of subsection (1) but is valid in other respects is enforceable . . . [w]ith respect to goods for which payment has been made and accepted or that have been received and accepted under section 2606."[4]

---

[3] As the trial court noted, the actual owner of the gravel, Stockpile, is not claiming that it is owed anything, nor is there any evidence that Stockpile assigned any interest to plaintiff.

[4] MCL 440.2606 provides:

> (1) Acceptance of goods occurs when the buyer

Plaintiff argues that defendant failed to respond to invoices that were sent to defendant by Bill Montgomery, on behalf of MEI, and that defendant accepted gravel from the Stockpile gravel pit. On the basis of those invoices, to which defendant apparently did not respond, plaintiff contends that the UCC writing requirement did not apply.

However, plaintiff fundamentally misperceives the nature of the deficiencies of his claim. Wholly apart from the issue of whether a contract in these circumstances must be in writing, the simple fact is that, first and foremost, there must have been a contract. The exception in MCL 440.2201(2) applies only to a writing "in confirmation of the contract," and the exception in MCL 440.2201(3) applies only to a contract that "is valid in other respects." Thus, even where those provisions apply, both require the existence of an underlying contract. See *Lorenz Supply Co v American Standard Inc*, 419 Mich 610, 615-616; 358 NW2d 845 (1984) ("A writing that satisfies [MCL 440.2201] does not prove the terms of *the contract*; such a writing merely removes the bar to the enforcement *of the contract . . . .*") (Emphases added).

In this case, as the trial court found, there is no evidence of any contract between plaintiff and defendant. Defendant submitted evidence showing that it obtained gravel from the pit pursuant to its contract with Ferrari, and that it fully paid for that gravel. Plaintiff did not present any evidence of a separate contract between plaintiff and defendant for additional gravel. The most that plaintiff might be able to prove is that he had received an oral assignment (from Bill Montgomery) of an interest in the receivables from the sale of gravel. The trial court thus did not err in finding that plaintiff failed to establish the existence of any contract between himself and defendant.

## B. VALIDITY OF ASSIGNMENT

Furthermore, the trial court correctly held that plaintiff had failed to demonstrate that Ben Montgomery "ever gave an interest to his brother to collect all this money" such that Bill Montgomery could have assigned that interest to plaintiff. Plaintiff's claim against defendant was premised on plaintiff having acquired an interest in receivables in the gravel pursuant to an oral agreement with Bill Montgomery. However, the submitted evidence established that the gravel pit was owned by Stockpile, a company owned by Ben Montgomery (or his trust).

---

(a) after a reasonable opportunity to inspect the goods signifies to the seller that the goods are conforming or that he will take or retain them in spite of their nonconformity; or

(b) fails to make an effective rejection (subsection (1) of section 2602), but such acceptance does not occur until the buyer has had a reasonable opportunity to inspect them; or

(c) does any act inconsistent with the seller's ownership; but if such act is wrongful as against the seller it is an acceptance only if ratified by him.

(2) Acceptance of a part of any commercial unit is acceptance of that entire unit.

Regardless of Bill Montgomery's authority to conduct business operations at the gravel pit[5], there was no evidence that Bill Montgomery had any property interest in the Stockpile gravel pit, or its receivables, that he could assign. Bill Montgomery could only validly assign an interest that he possessed. See *First of America Bank v Thompson*, 217 Mich App 581, 587; 522 NW2d 516 (1996) ("An assignee stands in the shoes of the assignor and acquires the same rights as the assignor possessed.") Nor is there evidence that Bill Montgomery was authorized by Stockpile to assign its interests. To the contrary, defendant offered evidence that Ben Montgomery, who through a trust was the owner of Stockpile, had asserted that Bill Montgomery was not authorized to act for the company. In response, plaintiff offered the affidavit of Bill Montgomery, claiming that he had an agreement with Stockpile to sell gravel from the pit and keep any proceeds generated, and that he assigned to plaintiff the proceeds of sales of gravel to defendant. No documentary evidence of these agreements was presented to the trial court; nor any documentary proof that Bill Montgomery owned an interest in Stockpile or the proceeds of the sale of gravel. The evidence presented by plaintiff was legally insufficient to show any actual or apparent authority on the part of Bill Montgomery. See *Union City Milk Co*, 329 Mich 506, 513; 46 NW2d 361 (1951) ("Agency may not be established by proof of declarations by the supposed agent."); *Rohe Scientific Corp v National Bank of Detroit*, 133 Mich App 462, 469; 350 NW2d 280 (1984), citing *Harrigan v Reid Co v Hudson*, 291 Mich 478, 484; 289 NW 222 (1939) ("The authority of one person to contract for another must be determined from or by acts of his principal and cannot be proved by admissions or statements of the alleged agent.") Plaintiff presented no proof of any authority possessed by Bill Montgomery other than Bill's own statements; the trial court was correct in stating:

> There is nothing in writing from Stockpile that he ever gave an interest to his brother to collect all this money.

> \* \* \*

> I don't know how Bill gets the money from Stockpile unless there is some showing somehow Ben had some agreement that all the gravel coming out of the pit was owed to Bill Montgomery.

Because plaintiff failed to establish a genuine issue of material fact regarding either the existence of a contract between himself and defendant, or Bill Montgomery's authority to assign to plaintiff any interest in proceeds of the gravel sales in the first instance, the trial court did not err in granting defendant's motion for summary disposition and dismissing plaintiff's claims. MCR 2.116(C)(10).

---

[5] The record evidence reflects that Bill Montgomery claimed to be the operator of the gravel pit. However, the record further reflects Ben Montgomery's expressions of dissatisfaction with Bill Montgomery's bouncing of checks and failure to satisfy his financial obligations to Ben Montgomery, as well as Ben Montgomery's expression that he alone was authorized to do business for Stockpile, and that Bill Montgomery was not his agent or business partner but was instead a customer of Stockpile.

## II. DEFENDANT'S CROSS-APPEAL

Defendant argues that the trial court erred in dismissing its counterclaim for slander of title and injurious falsehood. The trial court dismissed these claims after a bench trial. This Court reviews a trial court's findings of fact at a bench trial for clear error, but reviews its conclusions of law de novo. *Ambs v Kalamazoo Co Rd Comm*, 255 Mich App 637, 651-652; 662 NW2d 424 (2003). Defendant further argues that the trial court erred in denying its request for attorney fees under the Construction Lien Act. A trial court's decision whether to award attorney fees under the Construction Lien Act is reviewed for an abuse of discretion. *ER Zeiler Excavating, Inc v Valenti, Trobec & Chandler Inc*, 270 Mich App 639, 641; 717 NW2d 370 (2006). Finally, defendant argues that the trial court erred denying its request for attorney fees and costs under MCL 600.2591(1) and (3), which permit an award of costs and attorney fees where a party files a frivolous lawsuit. A trial court's findings regarding whether an action is frivolous is reviewed for clear error. *Kitchen v Kitchen*, 465 Mich 654, 661-662; 641 NW2d 245 (2002). We find no error in the trial court's rulings.

## A. SLANDER OF TITLE AND INJURIOUS FALSEHOOD

For a plaintiff to prove slander of title, he must show that a defendant maliciously published false matter disparaging the plaintiff's title, causing it special damages.[6] *GKC Mich Theaters, Inc v Grand Mall*, 222 Mich App 294, 301; 564 NW2d 117 (1997); see also MCL 565.108. The elements of slander of title include falsity of statement and malice. *Stanton v Dachille*, 186 Mich App 247, 262; 463 NW2d 479 (1990). Malice may not be inferred merely from the filing of an invalid lien. A plaintiff must instead show that a defendant knowingly filed an invalid lien with the intent to cause the plaintiff injury. *Id*.

A claim for injurious falsehood may be brought if there "is some interference with an economically advantageous relationship which results in pecuniary loss rather than an action that directly affects property." *Kollenberg v Ramirez*, 127 Mich App 345, 350-351; 339 NW2d 176 (1983). In *Kollenberg*, *id*. at 352, this Court quoted 3 Restatement of Torts 2d, § 623A, p 334, as setting forth the following elements of an injurious falsehood claim:

---

[6] Plaintiff maintains that defendant could not establish a claim for slander of title because it never claimed to own any real property that was harmed by plaintiff's conduct. Defendant asserted this claim in connection with its defense of plaintiff's construction lien claim against Walmart, which defendant was contractually obligated to defend pursuant to an indemnity provision in its contract with Walmart. Neither party has cited authority either in support or contravention of the notion that a party that has assumed the defense of another party pursuant to a contractual agreement may assert a counterclaim for slander of title to property it does not own. We note that the contract between Walmart and defendant allows defendant to seek the cooperation of Walmart in "making any counterclaim against the person asserting the claim." This issue does not appear to have been argued before the trial court, nor did the trial court make any ruling on it in its opinion and order denying defendant's counterclaims. In light of our agreement with the trial court's stated reasoning, we find it unnecessary to decide this issue. See *Walters v Nadell*, 481 Mich 377, 387; 751 NW2d 431 (2008).

One who publishes a false statement harmful to the interests of another is subject to liability for pecuniary loss resulting to the other if

(a) he intends for publication of the statement to result in harm to interests of the other having a pecuniary value, or either recognizes or should recognize that it is likely to do so, and

(b) he knows that the statement is false or acts in reckless disregard of its truth or falsity.

Although the trial court did not explicitly state its findings in the context of referring to defendant's slander of title and injurious falsehood claims, it found that plaintiff's actions were not motivated by an improper purpose to harass or embarrass any of the defendants. The court further determined that plaintiff had a reasonable basis for believing that the facts underlying his legal position were true and that plaintiff's position was not devoid of legal merit. The trial court found that plaintiff pursued his claim to recoup money that he legitimately believed he was owed pursuant to an assignment of rights from Bill Montgomery. Plaintiff did not pursue the claim with the intent to harm defendants, but to collect money. Although plaintiff did not prevail on his claims, the trial court did not clearly err in implicitly finding that plaintiff did not possess the malice or intent necessary to sustain a claim for slander of title or injurious falsehood. We therefore affirm the trial court's dismissal of defendant's counterclaims.

## B. ATTORNEY FEES UNDER THE CONSTRUCTION LIEN ACT

MCL 570.1118(2) provides that in an action to enforce a construction lien through foreclosure, "[t]he court also may allow reasonable attorneys' fees to a prevailing defendant if the court determines the lien claimant's action to enforce a construction lien under this section was vexatious." The term "may" denotes permissive and not mandatory action. *C D Barnes Assoc, Inc v Star Heaven, LLC*, 300 Mich App 389, 425-426; 834 NW2d 878 (2013). A proceeding is vexatious under MCL 570.1118(2) if it is "undertaken 'without any reasonable basis for belief that there was a meritorious issue to be determined[.]'" *ER Zeiler Excavating*, 270 Mich App at 652.

"Each contractor, subcontractor, supplier, or laborer who provides an improvement to real property has a construction lien upon the interest of the owner or lessee who contracted for the improvement to the real property." MCL 570.1107(1). Evidence was presented that plaintiff entered into an agreement to loan Bill Montgomery money in exchange for an interest in proceeds from the sale of gravel from the Stockpile gravel pit. It was undisputed that gravel from that pit was used for the Walmart project, although it was disputed whether any gravel outside of defendant's contract with Ferrari, for which Ferrari acknowledged it was fully paid, was used for the project. As previously discussed, the trial court found that plaintiff's action was not motivated by an improper purpose to harass or embarrass any of the defendants, and that plaintiff had a reasonable basis for believing that the facts underlying his legal position were true and had legal merit. Although plaintiff did not prevail on his lien foreclosure claim, the trial court did not clearly err in finding that plaintiff had a reasonable basis for believing that there was a meritorious issue to be determined. Accordingly, the trial court did not err by denying defendant's request for attorney fees under MCL 570.1118(2).

## C. ATTORNEY FEES WHEN AN ACTION IS FRIVOLOUS

An action is frivolous if at least one of the following conditions is met:

> (i) The party's primary purpose in initiating the action or asserting the defense was to harass, embarrass, or injure the prevailing party.
>
> (ii) The party had no reasonable basis to believe that the facts underlying that party's legal position were in fact true.
>
> (iii) The party's legal position was devoid of arguable legal merit. [MCL 600.2591(3)(a)(i) – (iii).]

As previously noted, the trial court found that plaintiff believed that he had a legitimate interest in the gravel proceeds. The court therefore did not err in finding that his lawsuit was not intended for a primary purpose of harassing, embarrassing, or injuring any defendant. Although the trial court stated that plaintiff "had no reasonable basis to believe the facts underlying [his] legal positions were *untrue* and therefore devoid of legal merit," which is a misstatement of MCL 600.2591(3)(a)(ii)-(iii), it is clear from the trial court's opinion that the court found that there were disputed, relevant facts that provided plaintiff with a reasonable basis for believing that the facts underlying his legal position were in fact true. Finally, the trial court did not clearly err in determining that plaintiff's claim was not devoid of arguable legal merit. The fact that plaintiff did not prevail on his claims does not mean that they lacked arguable legal merit. *Louya v William Beaumont Hosp*, 190 Mich App 151, 164; 475 NW2d 434 (1991).

Affirmed. Neither party having prevailed, no costs may be taxed. MCR 7.219(A).

/s/ Mark T. Boonstra
/s/ Pat M. Donofrio
/s/ Elizabeth L. Gleicher