In re Elizabeth A. NOLAN, Debtor.

The Estate of Richard A. HAMILTON,
Plaintiff,

v.

Alice E. NOLAN, Defendant.

Bankruptcy No. 97–00589.

Adversary No. 97–10050.

United States Bankruptcy Court,
District of Columbia.

April 2, 1998.

Bruce L. Montgomery, Washington, DC, for Plaintiff.

Alfredia Y. Fuller, Washington, DC, for Defendant/Debtor.

## DECISION REGARDING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT

S. MARTIN TEEL, Jr., Bankruptcy Judge.

Under the court's consideration is Plaintiff's Motion for Summary Judgment. The complaint in this adversary proceeding seeks a determination that the damages award owed to the Estate of Richard A. Hamilton is nondischargeable pursuant to 11 U.S.C. § 523(a)(6). For the reasons set forth below, the motion shall be denied.

## I

## FACTS

The defendant Nolan and Sandra Butler were the equal owners of Natural Motion by Sandra, Inc. beauty salon ("NMS"), a District of Columbia corporation. Butler was the president and Nolan was the vice-president, registered agent, and a director of NMS. Nolan was elected chairman of the board in 1987 and 1988. Butler managed the day-to-day operations of NMS and Nolan oversaw the financial affairs. Nolan only visited NMS six to ten times since it opened. Nolan also owned another salon called Natural Motion by Liz, Inc. ("NML").

Richard Hamilton was hired as a shampoo assistant at NML in 1984. However, when NMS opened in 1986, Butler asked him to transfer there where he worked as a hair stylist. He was eventually promoted to artistic director of the salon.

After several years of employment with NMS, Hamilton became ill. On at least one occasion, Hamilton reported to work with a facial rash. Nolan saw the rash, questioned the nature of the rash, and requested medical proof (specifically that it was non-communicable). In spring of 1989, Hamilton developed several lesions around his right foot and ankle. In July of 1989, Hamilton was diagnosed with Kaposi's sarcoma, a form of cancer associated with AIDS. At his doctor's recommendation, he reduced his work schedule to three days per week and he used a stool to keep his foot elevated when styling clients' hair.

In November of 1990, Butler met with Hamilton to discuss his illness. Hamilton gave her permission to call his doctor to learn more about his condition. Butler spoke to the doctor's nurse and indicated that she was concerned about Hamilton's presence at NMS because it was detrimental to the business.

In January of 1991, Butler fired Hamilton, allegedly because of his illness and personal appearance. Butler then informed Nolan that she had terminated Hamilton. Hamilton, in turn, filed a complaint with the D.C. Commission on Human Rights ("Commission") against Nolan, Butler, and NMS.

Nolan filed a motion to dismiss herself as a party to the action, arguing that the acts of discrimination took place at NMS, an entity which she rarely visited and for which she had no day-to-day oversight responsibility, and that she should not be held liable for any alleged acts of discrimination in which she did not directly participate. The Commission rejected this argument, finding that as an owner and high management official, she was an employer and subject to the laws, rules and regulations of the D.C. Human Rights Act (which states that it is an unlawful discriminatory practice for an employer to discriminate against any individual in the terms and conditions of employment or to discharge that individual on the basis of personal appearance, physical handicap or sexual orientation). Further, she was kept abreast of personnel matters—she was informed by Butler when Hamilton's work schedule was reduced and when he was terminated.

Following a contested hearing on the merits, the Commission found that Hamilton was the victim of vicious discrimination on the basis of his disability and personal appearance. It issued a final decision in Hamilton's favor and awarded him in excess of $200,000 in back pay, medical expenses, and compensatory damages, as well as attorney fees.

Nolan filed a motion for reconsideration alleging, among other things, that the Commission should reconsider its decision denying her motion to dismiss because she did not directly participate in the alleged acts of discrimination and that she should not be

held personally liable for the discrimination. The Commission denied her motion finding that she acquiesced in the discriminatory acts. And because Nolan and Butler were named jointly and severally in the complaint, each party was liable for the entire amount of the award.

Butler appealed the decision to the D.C. Court of Appeals which affirmed the Commission's findings (except that it remanded the back pay award to the Commission to determine whether or not Hamilton had attempted to mitigate damages and what effect that should have on the award).

Hamilton died in 1996. Nolan filed a petition commencing a case under chapter 7 of the Bankruptcy Code (11 U.S.C.) in 1997, before having paid Hamilton any of the money owed to him. The Estate of Richard Hamilton then commenced this adversary proceeding in that bankruptcy case to determine the dischargeability of the debt owed by Nolan.

II

## ANALYSIS

### A. Section 523(a)(6) and Collateral Estoppel Effect of Commission's Decision on this Court

First, the court must decide what collateral estoppel effect the Commission's judgment shall have on the issues in this proceeding. "Collateral estoppel applies in bankruptcy courts only if, inter alia, the first court has made specific, subordinate, factual findings on the identical dischargeability issue in question—that is, an issue which encompasses the same prima facie elements as the bankruptcy issue—and the facts supporting the court's findings are discernible from that court's record." *Dennis v. Dennis (In re Dennis)*, 25 F.3d 274, 278 (5th Cir.1994).

11 U.S.C. § 523(a)(6) reads "[a] discharge ... does not discharge an individual debtor from any debt—for willful and malicious injury by the debtor to another entity or to the property of another entity." It is the plaintiff's burden to prove by a preponderance of the evidence that debtor's actions were will-

ful and malicious. Although the Commission found that Nolan discriminated against Hamilton, it did not find that her actions were willful or malicious. Neither willfulness nor maliciousness are elements of discrimination. Based on the record that has been submitted to this court, the plaintiff has not proven these elements by way of collateral estoppel.

To establish a prima facie case of discrimination based on disability or personal appearance, the Commission explained in its decision that the complainant must demonstrate that 1) he had a disability for which reasonable accommodation could be made, 2) he was qualified for the position, 3) he was adversely treated, and 4) others not in the same protected class were treated more favorably. (Citing *Texas Dep't of Community Affairs v. Burdine*, 450 U.S. 248, 252–53, 101 S.Ct. 1089, 1093–94, 67 L.Ed.2d 207 (1981); *American Univ. v. District of Columbia Comm'n on Human Rights*, 598 A.2d 416, 422 (D.C.1991)). The Commission found that Hamilton met this burden. Then the evidentiary burden shifts to the respondents to rebut the presumption by articulating legitimate, non-discriminatory reasons for terminating complainant. If respondents meet this burden (which they did), then complainant must demonstrate, by substantial evidence of record, that respondents' proffered reasons were not the true reasons for complainant's termination and that discriminatory reasons motivated respondent's actions. The Commission found that Hamilton also met this burden and thus it found liability.

■ However, in the Commission's findings there is nothing that indicates that Nolan's actions were willful or malicious. A willful injury is a "deliberate or intentional injury, not merely a deliberate or intentional act which leads to injury." *Kawaauhau v. Geiger*, —— U.S. ——, ——, 118 S.Ct. 974, 977, —— L.Ed.2d ——, —— (1998) (rejecting the standard of some Circuits which have held willful to encompass any acts done intentionally which cause injury). Malicious means "in conscious disregard of one's duties or without just cause or excuse." *Wheeler v. Laudani*, 783 F.2d 610, 615 (6th Cir.1986). *Accord Navistar Fin. Corp. v. Stelluti (In re Stelluti)*, 94 F.3d 84, 87 (2d Cir.1996). Mal-

ice, moreover, "is implied when anyone of reasonable intelligence knows that the act in question is contrary to commonly accepted duties in the ordinary relationships among people, and injurious to another." *Navistar Fin. Corp. v. Stelluti (In re Stelluti)*, 167 B.R. 29, 33 (Bankr.S.D.N.Y.1994) (internal quotation marks omitted), *aff'd*, 94 F.3d 84 (2d Cir.1996). The creditor objecting to the discharge has the burden of proving both the willfulness and the maliciousness elements. *In re Posta*, 866 F.2d 364, 367 (10th Cir.1989) (citations omitted).

■ There is nothing in the record that indicates that the Commission determined that Nolan intended to cause Hamilton injury or that she disregarded her duties without just cause or excuse. For the most part, the Commission's findings pertain to Butler who was Hamilton's direct supervisor. Regarding Nolan, the Commission found only that she was kept abreast of personnel matters, she was informed by Butler when Hamilton's work schedule was reduced, she once required Hamilton to provide a doctor's note, and she acquiesced when Butler terminated Hamilton.

None of this shows willfulness on the part of the Nolan. Butler, the part-owner, president and manager of NMS, not Nolan, made the decision to fire Hamilton. Butler and Hamilton had an agreement whereby Butler would run the salon and Nolan would manage the financial affairs. Commission's Decision at ¶ 32 and n. 3. Acquiescing in Butler's decision was a passive reaction on Nolan's part, and does not demonstrate willfulness. Nolan did not intentionally inflict any injury upon Hamilton. Although Nolan, as vice-president and part-owner of NMS, could have tried to convince Butler to rehire Hamilton, there is no evidence that Butler would have been persuaded to change her mind, or more importantly, that Nolan thought that she, Nolan, could do anything that would result in reversal of the termination. Her mere neglect of efforts to secure a reversal might constitute actionable negligence, but not a deliberate infliction of injury in the absence of more evidence.

Similarly, there is no evidence that the Commission determined that Nolan's actions

were malicious. It is not clear how the Commission held Nolan liable. It may have done so on a strict liability or imputation of liability theory that had nothing to do with Nolan's state of mind beyond her acquiescing after the fact in the termination.[1] There was no finding that Nolan knew of a duty to protest the termination decision or even that such a protest could have had meaningful results. In any event, lack of malice might have had no impact on imposing liability: without an articulation of the theory of liability it is impossible to tell whether malice was a necessary element to imposition of liability. For example, if Nolan reasonably relied on advice of counsel in taking a passive role, that might shield her from a finding of maliciousness, even though it might not have shielded her from liability to Hamilton. Or there might have been other circumstances demonstrating lack of malice. *Cf. Dorr, Bentley & Pecha, CPA's v. Pasek (In re Pasek)*, 983 F.2d 1524 (10th Cir.1993)(advice of counsel and other factors supported determination of no malice). Significantly, no punitive damages were imposed. So there was no determination of wantonness that could be brought to bear here to prove maliciousness by way of collateral estoppel.

Two of the cases which the plaintiff cites in support of its position can be easily distinguished from the instant case. In those cases, the state courts had specifically found willfulness and maliciousness or an effective equivalent. In *Johnson v. Miera (In re Miera)*, a court reporter sued the judge for whom he worked for civil battery because the judge had kissed him on the lips. 926 F.2d 741 (8th Cir.1991). The jury, which found for plaintiff, had been instructed that the plaintiff must show intentional contact by the defendant and willful indifference to the plaintiff's rights. *Id.* The defendant later filed for bankruptcy and the plaintiff filed a complaint to determine the judgment debt nondischargeable. The bankruptcy court found that "willful indifference" was the "effective equivalent of malice in the 523(a)(6)

sense" and thus granted summary judgment for the plaintiff. *Id.* The district court affirmed, as did the court of appeals, finding that the state court judgment and the trial evidence established that the "willful and malicious injury" issues had already been litigated in the prior state court proceedings. *Id.*

In *Biggers v. Wilson (In re Wilson)*, the plaintiff had sued the defendant for sexual harassment and wrongful termination and had won. 216 B.R. 258 (Bankr.E.D.Wis. 1997). The Wisconsin Labor and Industry Review Commission (LIRC) had clearly found that the defendant's conduct was deliberate and the bankruptcy court found that satisfied the willful prong of § 523(a)(6). *Id.* Further, the LIRC had found that the termination was wrongful and the bankruptcy court found that it followed that defendant's actions were without justification. *Id.* Thus, the court granted summary judgment for the plaintiff. These two cases are clearly distinguishable from the case at bar in which neither willfulness nor maliciousness on the part of the debtor has been litigated.

■ When elements needed to determine nondischargeability are sufficiently distinct from elements of a state court proceeding, the state court judgment will not preclude, on collateral estoppel grounds, determination of nondischargeability of debt. *See Recover-Edge L.P. v. Pentecost*, 44 F.3d 1284 (5th Cir.1995). Accordingly, the court will not give collateral estoppel effect to the Commission's judgment regarding discrimination because the elements are sufficiently distinct from the elements of § 523(a)(6).

### B. *Imputing Liability*

■ Butler, the one who actually terminated Hamilton because of his illness and personal appearance, engaged in more egregious behavior than did Nolan. However, even if Butler's behavior were found to be willful and malicious, this could not be imputed to the debtor Nolan. Pursuant to § 523(a)(6), a discharge does not discharge

---

1. Indeed, there is doubt in the court's mind that the judgment is even entitled to collateral estoppel effect with respect to the issue of whether the debtor inflicted injury. If the debtor's liability was based on strict liability, that does not establish even negligent infliction of injury, let alone intentional infliction of injury. If it rested on an imputation of liability, then that does not show that the debtor inflicted the injury but only that liability was imputed to her.

an individual debtor from any debt for willful and malicious injury **by the debtor** to another entity. The court must construe the statute according to its plain meaning. *United States v. Ron Pair Enters., Inc.*, 489 U.S. 235, 241, 109 S.Ct. 1026, 1030, 103 L.Ed.2d 290 (1989). The phrase "by the debtor" follows the phrase "for willful and malicious injury." "Thus, the plain meaning test requires that the debtor must have been the one who caused the willful and malicious injury. Imputed liability is insufficient." *Deroche v. Miller (In re Miller)*, 196 B.R. 334, 336 (Bankr.E.D.La.1996) (holding that the willful and malicious conduct of debtor's son should not be imputed to debtor for purposes of § 523(a)(6), in spite of state court judgment finding debtor liable); *see also Columbia Farms Distribution, Inc. v. Maltais (In re Maltais)*, 202 B.R. 807 (Bankr.D.Mass. 1996) (husband's alleged misconduct could not be imputed to wife so as to establish nondischargeability under willful and malicious injury exception, even though wife was president, treasurer and sole shareholder of corporation, but did not run the day-to-day affairs of the company). "[A] judgment based on actions for which the debtor may be legally responsible but which were not performed by the debtor is outside the scope of both the language and intent of the statute." *Bairstow v. Sullivan (In re Sullivan)*, 198 B.R. 417, 423 (Bankr.D.Mass.1996).

Further, the predecessor statute to § 523(a)(6), former Bankruptcy Act § 17(a)(8), did not specify whose conduct was necessary to find an obligation to be dischargeable. The addition of the phrase "by the debtor" indicates a rejection of an imputed or vicarious liability theory. *See Jones v. Whitacre (In re Whitacre)*, 93 B.R. 584 (Bankr.N.D.Ohio 1988); *Yelton v. Eggers (In re Eggers)*, 51 B.R. 452 (Bankr.E.D.Tenn. 1985); *Johnson v. Horne (In re Horne)*, 46 B.R. 814 (Bankr.N.D.Ga.1985).

This court agrees with the majority who have ruled that nondischargeability of a debt under § 523(a)(6) cannot be grounded on the imputation to the debtor of acts of another.[2]

Because willfulness and maliciousness cannot be imputed to the debtor, the cases which plaintiff has cited in support of its argument that intentional discrimination and sexual harassment are excepted from discharge under § 523(a)(6) are inappropriate. In all those cases, it was the debtor himself who had committed the willful, malicious acts. *See Gee v. Hammond (In re Gee)*, 173 B.R. 189 (9th Cir. BAP 1994); *Miera*, 926 F.2d 741; *Wilson*, 216 B.R. 258; and *Liccio v. Topakas (In re Topakas)*, 202 B.R. 850 (Bankr.E.D.Pa.1996).

Two of these cases actually support this court's position. In *Gee*, the court denied plaintiff's motion for summary judgment regarding nondischargeability under § 523(a)(6) because it concluded that a genuine issue of material fact existed as to whether the defendant's conduct had been intentional or merely negligent. 173 B.R. 189 (plaintiff had won state court judgment in a sexual harassment suit against defendant). Also, in *Topakas*, the matter was not decided on any dispositive motions. 202 B.R. 850. It went to trial and then the bankruptcy court made the determination that the debtor's actions, in sexually harassing the plaintiff, were willful and malicious. *Id.* Similarly, this case cannot be decided in the plaintiff's favor on a motion for summary judgment because genuine issues of material fact exist.

## CONCLUSION

For the foregoing reasons, the court concludes that the plaintiff's motion for summary judgment shall be denied.

**2.** In one published decision, this court held that a partner's fraud can be imputed to a debtor under § 523(a)(2)(A) for nondischargeability purposes. *FDIC v. Calhoun (In re Calhoun)*, 131 B.R. 757 (Bankr.D.D.C.1991). However, § 523(a)(2)(A) is markedly different from § 523(a)(6) in that it does not contain the phrase "by the debtor" which was a significant addition when § 523(a)(6) of the Bankruptcy Code replaced § 17(a)(8) of the Bankruptcy Act.