In re Bradley NOBLIT and Peggy Brisbane Noblit, Debtor.

Patricia Williams, Plaintiff,

v.

Bradley Noblit and Peggy Brisbane Noblit, Defendant.

Bankruptcy No. 04–32030.
Adversary No. 04–3128.

United States Bankruptcy Court,
E.D. Michigan,
Southern Division.

July 19, 2005.

Michael A. Mason, Flint, MI, for trustee.

## OPINION DENYING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT

WALTER SHAPERO, Bankruptcy Judge.

### I. Background

This adversary proceeding was commenced by Patricia Williams ("Plaintiff") in the above-captioned Chapter 7 bankruptcy case on August 13, 2004. The adversary complaint alleges that a certain debt owing to Plaintiff by Debtors Bradley and Peggy Noblit ("Defendants") is nondischargeable pursuant to 11 U.S.C. § 523(a)(4). On May 2, 2005, Plaintiff filed a motion for summary judgment pursuant to Fed. R. Bankr.P. 7056.

The Court has considered the parties' complaint and answer and attachments thereto, as well as the parties' summary judgment pleadings. The Court concludes that oral argument on this motion is not necessary. For the foregoing reasons, the Court denies Plaintiff's motion for summary judgment.

The following are the basic, undisputed facts in this matter. In September 2001, Plaintiff filed a lawsuit against Defendants in the Circuit Court for the County of Genesee for wrongful eviction and conversion. In her state court complaint,

Plaintiff alleged that she sold certain real property located in the City of Flint to Defendants with an agreement that Plaintiff would have a certain amount of time to vacate the premises, and upon her failure to vacate, Defendants would be entitled to rent of $300 per month. Plaintiff further alleged that Defendants wrongfully evicted her in violation of M.C.L.A. § 600.2918, "changed the locks, sold some of the property, took other items, and cleared out about 95% of the Plaintiff's belongings," which she claims permanently deprived her of all but 15% to 20% of her personal possessions. Plaintiff also alleged that the Defendants' actions amounted to conversion of "Plaintiff's property to their own use." Defendants did not appear in the state court action, and due to their default, a judgment was entered against Defendants on June 17, 2002, in the amount of $91,245.00, with interest to accrue at the statutory rate. ("Default Judgment"). The Default Judgment entered by the state court is a form judgment for civil matters, in which the box next to "Default" is checked, and the blank for the amount of the judgment is filled in. Plaintiff moves for summary judgment of her Section 523(a)(4) action arguing that the Default Judgment collaterally estops Defendants from relitigating this matter.

The parties disagree as to the collateral estoppel effect the Default Judgment has upon this Section 523(a)(4) action. Defendants have objected to summary judgment, arguing that there was no allegation by Plaintiff in the state court action of the Section 523(a)(4) elements, nor is there any evidence that these elements were actually litigated and/or considered by the state court judge prior to, or contemporaneous with, entry of the Default Judgment.

## II. *Summary Judgment Standard*

Federal Rule of Civil Procedure 56 is made applicable in its entirety to bankruptcy adversary proceedings by Federal Rule of Bankruptcy Procedure 7056. Bankruptcy Rule 7056(c) provides that summary judgment is proper "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." The moving party bears the burden of showing the absence of a genuine issue of material fact as to an essential element of the nonmoving party's case. *Street v. J.C. Bradford & Co.*, 886 F.2d 1472, 1479 (6th Cir. 1989) (citing *Celotex Corp. v. Catrett*, 477 U.S. 317, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986)). The burden then shifts to the nonmoving party once the moving party has met its burden, and the nonmoving party must then establish that a genuine issue of material fact does indeed exist. *Janda v. Riley–Meggs Industries, Inc.*, 764 F.Supp. 1223, 1227 (E.D.Mich.1991). In other words, summary judgment may be appropriately granted where the issues in a particular case involve solely the application of law to undisputed facts. *Choate v. Landis Tool Co.*, 486 F.Supp. 774, 775 (E.D.Mich.1980).

## III. *Collateral Estoppel*

Collateral estoppel applies in bankruptcy dischargeability actions. *Grogan v. Garner*, 498 U.S. 279, 111 S.Ct. 654, 112 L.Ed.2d 755 (1991). The *Grogan* Court also determined that a preponderance of the evidence standard must be used for collateral estoppel determinations in dischargeability proceedings. *Grogan*, 498 U.S. at 291, 111 S.Ct. 654. However, *Grogan* did not address what effect a default judgment would have on the application of collateral estoppel in dischargeability proceedings.

In the case of *In re Calvert*, 105 F.3d 315 (6th Cir.1997), the Sixth Circuit determined that collateral estoppel can apply even in a true default judgment situation (i.e., complete absence from the proceedings by the defendant). *Calvert*, 105 F.3d at 317 (quoting *Marrese v. American Academy of Orthopaedic Surgeons*, 470 U.S. 373, 105 S.Ct. 1327, 84 L.Ed.2d 274 (1985)). The Sixth Circuit adopted the two-part test enunciated by the Supreme Court in *Marrese*: (1) whether state law gives preclusive effect to default judgments; and (2) if the subsequent claim is precluded, the court may then look to whether Congress intended for an exception to 28 U.S.C. § 1738 to apply to the situation at hand.[1] *Calvert*, 105 F.3d at 317 (citing *Marrese*, 470 U.S. at 386, 105 S.Ct. 1327). As a California default judgment was at issue in *Calvert*, the Sixth Circuit determined that California law did give preclusive effect to default judgments, and that Congress did not intend for an exception to Section 1738 to apply to true default judgments. *Calvert*, 105 F.3d at 320–22.

■ "True" default judgments are given preclusive effect in Michigan. *See Rohe Scientific Corp. v. National Bank of Detroit*, 133 Mich.App. 462, 467, 350 N.W.2d 280 (1984); *see also Cresap v. Waldorf (In re Waldorf)*, 206 B.R. 858, 867–68 (Bankr. E.D.Mich.1997) (recognizing the preclusive effect default judgments have in Michigan for collateral estoppel determinations, citing both Michigan cases as well as its own previous holding).

■ Although Michigan law would give preclusive effect to a true default judgment such as the one in this case, the elements of collateral estoppel must still be satisfied. For collateral estoppel to apply, Michigan requires that the parties must be the same, the prior proceeding must have culminated in a valid, final judgment, and the issue must have been actually litigated and necessarily determined. *See People v. Gates*, 434 Mich. 146, 154, 452 N.W.2d 627 (1990). In this case, there is no question the parties were the same in the state court proceeding and this one. Further, there is no dispute that the prior judgment was valid and final. However, the parties do take issue with the "actually litigated" element of the collateral estoppel analysis.

### IV. Section 523(a)(4)

■ Under 11 U.S.C. § 523(a)(4), a debt will be determined nondischargeable if it is a debt "for fraud or defalcation while acting in a fiduciary capacity, embezzlement, or larceny." The adversary complaint appears to exclusively seek relief for Defendants' alleged larceny. The Plaintiff's brief in support of her summary judgment motion, in the last paragraph indicates that the motion is based upon the larceny allegation and Default Judgment thereon. No where in her Motion, adversary complaint, or related pleadings does Plaintiff allege (nor does an independent assessment of the allegations support) embezzlement, or the existence of an express or technical trust relationship,[2] as is re-

---

1. Section 1738 requires the federal courts to give full faith and credit to state court judicial proceedings.

2. The Sixth Circuit has adopted a narrow definition of the requirement that the Debtor act in a "fiduciary capacity" under Section 523(a)(4) in the case of *R.E. America, Inc. v. Garver (In re Garver)*, 116 F.3d 176, 179 (6th Cir.1997), holding that the term "implies the existence of an express or technical trust relationship," requiring that "the debtor must hold funds in trust for a third party to satisfy the fiduciary relationship element of the defalcation provision of § 523(a)(4)."

quired for the conclusion that Defendants were acting in a "fiduciary capacity." In contrast, neither embezzlement nor larceny are conditioned upon the existence of an action taken in a "fiduciary capacity," and for Section 523(a)(4) purposes, federal common law, rather than state law, controls the meaning of these terms. *Brady v. McAllister (In re Brady)*, 101 F.3d 1165, 1172–73 (6th Cir.1996). Federal common law defines embezzlement as "the fraudulent appropriation of property by a person to whom such property has been entrusted or into whose hands it has lawfully come." *Id.* Larceny is different in that the original taking must have been unlawful, and is defined as "the fraudulent and wrongful taking and carrying away of the property of another with intent to convert such property to the taker's use without the consent of the owner." *Graffice v. Grim (In re Grim)*, 293 B.R. 156, 166 (Bankr. N.D.Ohio 2003).

## V. *Analysis and Conclusion*

 The Court concludes that neither the wrongful eviction count, nor the conversion count is a cognizable basis under Section 523(a)(4). As noted, other than the state court complaint and Default Judgment, there is no other substantive state court record upon which the Court can determine whether the requisite Section 523(a)(4) elements were actually litigated.

## A. Wrongful Eviction

The wrongful eviction count was based upon M.C.L.A. § 600.2918, which states:

(1) Any person who is ejected or put out of any lands or tenements in a forcible and unlawful manner, or being out is afterwards held and kept out, by force, if he prevails, is entitled to recover 3 times the amount of his actual damages or $200.00, whichever is greater, in addition to recovering possession.

(2) Any tenant in possession of premises whose possessory interest has been unlawfully interfered with by the owner, lessor, licensor, or their agents shall be entitled to recover the amount of his actual damages or $200.00, whichever is greater, for each occurrence and, where possession has been lost, to recover possession. Unlawful interference with a possessory interest shall include:

(a) The use of force or threat of force.

(b) The removal, retention, or destruction of personal property of the possessor.

(c) A change, alteration, or addition to the locks or other security devices on the property without forthwith providing keys or other unlocking devices to the person in possession.

(d) The boarding of the premises which prevents or deters entry.

(e) The removal of doors, windows, or locks.

(f) Causing, by action or omission, the termination or interruption of a service procured by the tenant or which the landlord is under an existing duty to furnish, which service is so essential that its termination or interruption would constitute constructive eviction, including heat, running water, hot water, electric, or gas service.

(g) Introduction of noise, odor or other nuisance.

(3) The provisions of subsection (2) shall not apply where the owner, lessor, licensor, or their agents can establish that he:

(a) Acted pursuant to court order or

(b) Interfered temporarily with possession only as necessary to make needed repairs or inspection and only as provided by law or

(c) Believed in good faith the tenant had abandoned the premises, and after diligent inquiry had reason to believe the tenant does not intend to return, and current rent is not paid.

(4) A person who has lost possession or whose possessory interest has been unlawfully interfered with may, if that person does not peacefully regain possession, bring an action for possession pursuant to section 5714(1)(d) of this act or bring a claim for injunctive relief in the appropriate circuit court. A claim for damages pursuant to this section may be joined with the claims for possession and for injunctive relief or may be brought in a separate action.

(5) The provisions of this section may not be waived.

(6) An action to regain possession of the premises under this section shall be commenced within 90 days from the time the cause of action arises or becomes known to the plaintiff. An action for damages under this section shall be commenced within 1 year from the time the cause of action arises or becomes known to the plaintiff.

The above statute does not explicitly or implicitly contain any of the Section 523(a)(4) elements, and specifically with regard to the claim of larceny, whether or not the Default Judgment supports the conclusion that any "taking" was fraudulent and wrongful, the statute does not include the required "intent to convert such property to the taker's use."

## B. Conversion Count

The relevant paragraph of the state court conversion count states in Paragraph 16:

The actions of the Defendants, constitute conversion the the [sic] Plaintiff's property to their own use.

It is unclear what "conversion" means, or was intended by Plaintiff to mean, for purposes of determining whether larceny (as well as the other two bases for a Section 523(a)(4) action) were actually litigated. This ambiguity alone precludes application of collateral estoppel to this adversary proceeding as the required "actually litigated" finding is absent. Even comparing the meaning of the term "Conversion," with "larceny," the Court concludes that the required elements of "larceny" were not actually litigated.[3]

In light of the above, the Court finds that Plaintiff has not met her burden of showing the absence of a genuine issue of material fact as to the essential elements of Plaintiff's Section 523(a)(4) claim. Thus, Plaintiff's Motion for Summary Judgment is denied.

An appropriate order will enter.

---

**3.** Michigan courts have generally defined "conversion" as, "a distinct act of dominion wrongfully exerted over another's personal property," and more specifically as "intentionally dispossessing another of a chattel, ... refusing to surrender a chattel on demand." *Rohe*, 133 Mich.App. at 468, 350 N.W.2d 280 (citing *Attorney General v. Hermes*, 127 Mich. App. 777, 786, 339 N.W.2d 545 (1983), and quoting *Thoma v. Tracy Motor Sales, Inc.*, 360 Mich. 434, 438, 104 N.W.2d 360 (1960)); *see also Black's Law Dictionary* (8th ed.2004) (defining "conversion" in the tort and criminal law context as: "The wrongful possession or disposition of another's property as if it were one's own; an act or series of acts of willful interference, without lawful justification, with an item of property in a manner inconsistent with another's right, whereby that other person is deprived of the use and possession of the property."). These definitions to not rise to the level of "larceny" as defined under federal common law for Section 523(a)(4) purposes.