Beth A. Buchanan, United States Bankruptcy Judge
This Court has jurisdiction over this matter pursuant to 28 U.S.C. §§ 157(a) and 1334, and the standing General Order of Reference in this District. This is a core proceeding pursuant to 28 U.S.C. § 157(b)(2)(I). This matter is before this Court on Creditor/Plaintiff Robert Greer's Motion for Partial Summary Judgment [Docket Number 22]; and Defendant Gerald *768 Benjamin Bruce's Motion in Objection to Robert Greer's Motion for Partial Summary Judgment [Docket Number 24].
Plaintiff Robert Greer ("Greer") seeks a determination that a state court judgment debt totaling $607,182.40 in combined compensatory and punitive damages owed by Debtor Gerald Benjamin Bruce ("Debtor") is excepted from discharge. On summary judgment, Greer argues that the debt is nondischargeable as a matter of law based on the preclusionary effect to be given to the factual and legal conclusions in the state court judgment.
After review of the evidence, this Court concludes that the state court judgment is not entitled to preclusive effect. Specifically, the state court judgment does not establish "larceny" pursuant to Bankruptcy Code Section[1] 523(a)(4) because the state court determined that the Debtor and his father came into possession of Greer's property lawfully. Furthermore, the state court judgment's factual and legal conclusions do not establish the stringent elements of a "willful and malicious injury" pursuant to Bankruptcy Code Section 523(a)(6). For these reasons, Greer's motion for summary judgment is denied.
I. BACKGROUND
On December 21, 2015, Greer filed his adversary complaint against the Debtor in which he objected to the Debtor's discharge pursuant to Bankruptcy Code Section 727(a) and further objected to the dischargeability of the state court judgment debt owed to Greer pursuant to Bankruptcy Code Sections 523(a)(4) and (a)(6). On summary judgment, Greer proceeds solely with respect to his Section 523 claims seeking a conclusion that the state court judgment awarding Greer compensatory and punitive damages is entitled to preclusive effect on the elements of his nondischargeability claims as a matter of law.
A. Magistrate's Decision and State Court Judgment
Greer focuses on the factual findings and legal conclusions of Magistrate Michael L. Bachman of the Court of Common Pleas of Hamilton County, Ohio who rendered his Magistrate's Decision on November 5, 2013 following a multiple day non-jury trial ending on July 10, 2013 [Docket Number 22, Ex. A] ("Magistrate's Decision").
According to the Magistrate's Decision, Greer was engaged in the business of salvaging industrial machinery and equipment and usable, saleable scrap for resale on the open market at the time the dispute began [Id. , p. 1]. In 2008, Greer began using land owned by Earl Bruce, the Debtor's father, at 10901 Stephens Road, Cincinnati, OH 45052 ("Stephens Road Property") as a "laydown yard" to store Greer's machinery and scrap [Id. ]. At the same time, Greer began clearing brush, leveling the land, and dismantling old trailers [Id. ]. In 2009, Earl Bruce also let Greer use land adjacent to the Stephens Road Property that Earl was leasing from Whitewater Township for the same purpose [Id. , pp. 1-2].
In 2010, Earl Bruce transferred the Stephens Road Property to his son, the Debtor, by way of quitclaim deed [Id. , p. 2]. At some point in 2011, the Bruces informed Greer that they were thinking about selling the Stephens Road Property and that Greer needed to remove his items in order to make the property more marketable [Id. ]. Although the parties provided divergent testimony about what the Bruces told Greer, Greer was denied access to the *769 Stephens Road Property on June 16, 2011 and later found that the locks had been changed [Id. ]. Around that same time, Robert Writesel ("Writesel") and a crew of men began removing Greer's materials off of the Stephens Road Property at the direction of the Bruces [Id. ]. For several days, Writesel and his crew continued hauling away Greer's property often while Greer objected to and documented the activity [Id. ]. In all, Writesel and his crew hauled approximately twenty truckloads of Greer's materials from the Stephens Road Property which was eventually sold for scrap value [Id. ].
Initially, Greer sought a temporary injunction, pro se, in order to prevent more of his materials from being taken, but his attempt was unsuccessful [Id. ]. Greer then filed a complaint against the Bruces and proceeded to trial on his claim for conversion seeking the fair market value of the lost property, punitive damages, and attorney fees [Id. ].
Over the conflicting testimony of Earl Bruce denying the existence of such an agreement and asserting that Greer was a trespasser,[2] the Magistrate concluded that Greer and Earl Bruce had reached an oral agreement allowing Greer to use the Stephens Road Property as a "laydown yard" in exchange for Greer improving and cleaning up the land [Id. , pp. 3-4]. As such, the Magistrate concluded that written notice and the proper legal process for eviction had to be followed by the Bruces prior to removing Greer's materials from the Stephens Road Property [Id. , pp. 3-4]. The Magistrate concluded that the Bruces "failed to avail themselves to the available remedies at law and instead resorted to self-help at their own peril" [Id. , p. 4].
The Magistrate further rejected the Bruces's assertion that they believed Greer had abandoned his materials on the Stephens Road Property. The Magistrate noted that, not only was Greer actively trying to sell the materials, but that Greer "strenuously objected" to his belongings being hauled away by Writesel over the course of several days [Id. , p. 5]. From this evidence, the Magistrate concluded that the Bruces committed the tort of conversion "by having [Greer's materials] removed and sold for scrap value." [Id. ].
During closing arguments, counsel for Earl Bruce and the Debtor argued that the Debtor should not be held jointly liable with Earl Bruce for damages that the court may award [Id. ]. The Debtor admitted to taking title to the Stephens Road Property in August of 2010 but testified that he only visited the property "once or twice" and was not actively involved in the family business [Id. ]. The Debtor admitted to hiring Writesel to remove Greer's property at the direction of his father, but the Debtor claimed that he did not know whose equipment it was and assumed that it belonged to his father [Id. ]. The Magistrate determined that Earl Bruce knowingly directed his son to hire Writesel to haul away Greer's materials [Id. , pp. 5-6]. The Magistrate further determined that the Debtor hired Writesel to do the job "without ever knowing who the material belonged to" and that "[c]onscious disregard for who actually owned the equipment and machinery is not a defense for [the Debtor]'s actions" [Id. , p. 6]. The Magistrate concluded that the plan to hire Writesel to clear up the Stephens Road Property by hauling away Greer's belongings was a "joint venture carried out by Earl and Benjamin Bruce" making them both culpable for the actions of Writesel [Id. ]. Consequently, the Magistrate held Earl Bruce and the Debtor jointly and *770 severally liable to Greer for conversion [Id. ].
On the issue of damages, the Magistrate concluded that the proper measure in a conversion action is the value of the converted property at the time of the conversion [Id. ]. Both Greer and a witness for Greer, Robert Taylor, testified to the value of the property [Id. , pp. 6-7]. Based on their testimony, the Magistrate concluded that the value of the property hauled away (as reduced by the amount of a normal commission fee) and proper amount of compensatory damages to be awarded to Greer totaled $303,591.20 [Id. , p. 7].
As a final matter, the Magistrate addressed Greer's request for an award of punitive damages and attorney fees [Id. ]. The Magistrate noted that, pursuant to Ohio Rev. Code 2315.21(C)(1), Greer must show that the "Defendants demonstrate malice or aggravated or egregious fraud, or Defendants as principals or masters knowingly authorized, participated in, or ratified actions or omissions of an agent or servant that so demonstrate." [Id. ]. The Magistrate further specified that punitive damages are allowed in a conversion action when it involves "elements of fraud, malice or insult." [Id. ] The Magistrate concluded that clear and convincing evidence supported that:
... both Earl Bruce and [the Debtor] knowingly authorized and in fact, hired Writesel to haul away [Greer]'s belongings. Even after [Greer] protested and confronted Writesel several times, Writesel was never instructed by the Bruces to stop hauling away the equipment and machinery. The Bruces demonstrated a conscious disregard for [Greer]'s property rights and for the safety of others by engaging in self-help rather [than] using judicial process. In further support of his request for punitive damages, [Greer] directed the court to Plaintiff's Exhibit 13, which is a picture of Writesel on the Property raising his middle finger at [Greer] while [Greer or Greer's son] photographed the equipment being hauled away. Plaintiff's Exhibit 13 unquestionably demonstrates malice and insult towards Plaintiff. The court finds adequate grounds to award punitive damages due to the egregious nature of Writesel's actions on behalf of Defendants. The court declines to award attorney fees. Therefore, Plaintiff is awarded punitive damages in the amount of $303,591.20.
[Id. , p. 8]. After rejecting the Debtor and Earl Bruce's counterclaims against Greer, Magistrate Bachman proceeded to award Greer a total of $303,591.20 in compensatory damages and an additional award of $303,591.20 in punitive damages against Earl Bruce and the Debtor [Id. , p. 9].
Following the rendering of the Magistrate's Decision, the Debtor and Earl Bruce objected to the ruling. Their objection was overruled by Hamilton County Court of Common Pleas Court Judge Jody Luebbers in the Final Judgment Entry entered February 19, 2014 ("Final Judgment Entry") [Id. , Ex. B]. In the Final Judgment Entry, Judge Luebbers adopts the Magistrate's Decision, including its factual findings and application of the law, as the judge's own [Id. ]. The Final Judgment Entry enters judgment in favor of Greer and against the Debtor and his father on Greer's claim for conversion and awards Greer damages in the amounts recommended by the Magistrate: $303,591.20 in compensatory damages and an additional award of $303,591.20 in punitive damages (collectively, the Magistrate's Decision and Final Judgment Entry will be referred to as the "State Court Judgment") [Id. ].
B. Appeals Process
The Debtor and Earl Bruce appealed the State Court Judgment to the Court of Appeals, First Appellate District of Ohio *771 ("Court of Appeals") which, on November 5, 2014, rendered a Judgment Entry and Opinion affirming the State Court Judgment [Id. , Ex. C]. The Court of Appeals rejected the Debtor and Earl Bruce's argument that the trial court authorized them to remove Greer's belongings when, prior to the trial, a magistrate refused to grant Greer's request for an injunction and orally pronounced that the Bruces could "clean the place up" and do what they "need to do" [Id. , at p. 4]. The Court of Appeals found no merit to their argument because a court "speaks only through its journal entries" and any reliance by the Bruces on the oral pronouncements of the magistrate was "misplaced" [Id. ]. The Court of Appeals further rejected the Debtor and Earl Bruce's argument that Greer was a trespasser on the Stephens Road Property concluding that the Magistrate's determination that Greer had an oral lease to use the property as a "laydown yard" to be supported by credible evidence [Id. , p. 5]. The Court of Appeals concluded that their actions in removing Greer's belongings without using appropriate judicial eviction processes were unlawful and that the trial court did not err in its conclusion that they were liable for conversion [Id. , pp. 5-6]. The Debtor and Earl Bruce also took issue with the trial court's award of punitive damages. While the dissent concluded that the Magistrate focused too heavily on the conduct of the agent, Writesel [Id. , pp. 7-8], the majority concluded that the trial court did not abuse its discretion when granting punitive damages against them [Id. , pp. 6-7].
Subsequently, the Debtor and Earl Bruce attempted an appeal to the Supreme Court of Ohio which declined to accept jurisdiction of the appeal in an Entry dated June 24, 2015 [Id ., Ex. D].
C. Debtor's Evidentiary Materials
In response to Greer's motion for summary judgment, the Debtor provides evidentiary materials that include Greer's answers to interrogatories [Docket Number 24, Ex. A]; Letters and Emails from Metropolitan Sewer District of Greater Cincinnati ("MSD") [Id. , Ex. B]; an Affidavit of Dion D. Vega [Id. , Ex. C]; the Transcript from the injunction hearing held on June 22, 2011 in front of Magistrate David Kothman of the Court of Common Pleas of Hamilton County, Ohio ("Injunction Hearing") [Id. , Ex. D]; and a letter from Jason Willis, a Manager of E-Town Landfill and Recycling [Id. , Ex. E].
With some of these materials, the Debtor attempts to call into question the factual findings in the State Court Judgment regarding the value of Greer's property that was removed from the Stephens Road Property. Specifically, the Debtor provides documents from MSD noting that any equipment Mr. Greer received from MSD facilities had previously been declared obsolete and of no value to MSD [Id. , Ex. B]. To further support a lack of value for Greer's property, the Debtor provides the affidavit of Dion D. Vega who attested to the Greer family's attempted to sell Greer's equipment to Vega for scrap value [Id. , Ex. C]. The Debtor also provides the letter of Jason Willis who formerly employed Bobby Taylor, a trial witness for Greer on the value of Greer's equipment [Id. , Ex. E]. In the letter, Mr. Willis calls into question Bobby Taylor's qualifications as an expert on metals and diesel mechanics [Id. ]
Finally, the Debtor provides the transcript from the Injunction Hearing held on June 22, 2011 to show reliance on the magistrate's oral pronouncements [Id. , Ex. D]. The transcript demonstrates that Greer did not attend the Injunction Hearing and was denied an injunction [Id. ]. During the hearing, Earl Bruce asked if he could continue to clean up the property and Magistrate Kothman answers that because *772 no "TPO" was in place, "[m]anage to clean the place up. Live free, work hard .... Be on you (sic) way, do what you need to do" [Id. , pp. 3-4].
II. SUMMARY JUDGMENT STANDARD
This Court addresses Greer's motion for summary judgment under the standard set forth in Rule 56(a) of the Federal Rules of Civil Procedure (the "Civil Rules") made applicable to this proceeding by Rule 7056 of the Federal Rules of Bankruptcy Procedure. Civil Rule 56(a) provides that summary judgment is to be granted by this Court "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). "As to materiality, the substantive law will identify which facts are material. Only disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment." Anderson v. Liberty Lobby, Inc. , 477 U.S. 242, 248, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986). A "genuine" dispute exists only where "evidence is such that a reasonable [finder of fact] could return a [judgment] for the nonmoving party." Id. ; Gallagher v. C.H. Robinson Worldwide, Inc. , 567 F.3d 263, 270 (6th Cir. 2009).
In order to prevail, the moving party, if bearing the burden of persuasion at trial, must establish all elements of his claim. Celotex Corp. v. Catrett , 477 U.S. 317, 331, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986). Thereafter, "the nonmoving party must come forward with 'specific facts showing that there is a genuine issue for trial.' " Matsushita Elec. Indus. Co. v. Zenith Radio Corp. , 475 U.S. 574, 587, 106 S.Ct. 1348, 89 L.Ed.2d 538 (1986) (citations omitted). All inferences drawn from the underlying facts must be viewed in a light most favorable to the party opposing the motion. Id. at 587-88, 106 S.Ct. 1348 ; Anthony v. BTR Auto. Sealing Sys., Inc. , 339 F.3d 506, 511 (6th Cir. 2003). Nonetheless, mere conclusory allegations or unsupported opinions of the nonmovant are insufficient to defeat a motion for summary judgment. Matsushita , 475 U.S. at 586-88, 106 S.Ct. 1348 ; see also Blaney v. Cengage Learning, Inc. , 2011 WL 1532032, at *7, 2011 U.S. Dist. LEXIS 43780 at *19-20 (S.D. Ohio, Apr. 22, 2011) ("Although the summary judgment standard requires that evidence of record be viewed in the light most favorable to the nonmoving party, it does not require that all bald assertions and subjective unsupported opinions asserted by the nonmoving party be adopted by a court.").
III. LEGAL ANALYSIS
Greer seeks a determination that the State Court Judgment debt totaling $607,182.40 in combined compensatory and punitive damages is excepted from discharge in the Debtor's bankruptcy case pursuant to Bankruptcy Code Sections 523(a)(4) and/or 523(a)(6). Greer asserts that the State Court Judgment is entitled to preclusive effect establishing the elements to except the debt from discharge as a matter of law.
Pursuant to 28 U.S.C. § 1738, federal courts are directed to give the same "full faith and credit" to a state court judgment as another court of that state would give. Sill v. Sweeney (In re Sweeney) , 276 B.R. 186, 189 (6th Cir. BAP 2002) (citing Markowitz v. Campbell (In re Markowitz) , 190 F.3d 455, 461 (6th Cir. 1999) ). Consequently, to determine whether the State Court Judgment is entitled to preclusive effect in this nondischargeability proceeding, this Court must determine whether it would be entitled to such effect under Ohio's preclusionary principles.
The Supreme Court has determined that issue preclusion is the preclusionary principle that is to be applied to determine whether facts or legal issues *773 decided in a prior state court judgment bar relitigation of those same facts or issues in a separate bankruptcy dischargeability proceeding. Grogan v. Garner , 498 U.S. 279, 284 n.11, 111 S.Ct. 654, 112 L.Ed.2d 755 (1991) ; Clark v. Springhart (In re Springhart) , 450 B.R. 725, 730 (Bankr. S.D. Ohio 2011). Under Ohio law, Greer must establish four prerequisites for the application of issue preclusion:
1) A final judgment on the merits in the previous case after a full and fair opportunity to litigate the issue; 2) The issue must have been actually and directly litigated in the prior suit and must have been necessary to the final judgment; 3) The issue in the present suit must have been identical to the issue in the prior suit; 4) The party against whom estoppel is sought was a party or in privity with the party to the prior action.
Sweeney , 276 B.R. at 189 ; Miller v. Grimsley (In re Grimsley) , 449 B.R. 602, 609 (Bankr. S.D. Ohio 2011).
In this case, the parties do not dispute that the State Court Judgment is a final judgment on the merits rendered after a multi-day trial in which the Debtor was a party who fully participated. As such, this Court concludes that the first and fourth elements for the application of issue preclusion have been met.
What is left to determine is whether issues actually and directly litigated in the state court trial and necessary to the final judgment are identical to the elements Greer must prove to hold the judgment debt against the Debtor nondischargeable pursuant to Bankruptcy Code Sections 523(a)(4) and/or 523(a)(6). This requires a review of the required elements of these dischargeability provisions to compare to the issues determined by the state court.
A. Section 523(a)(4) : Larceny
Greer claims that issues decided in the State Court Judgment match the required elements to except the debt from discharge pursuant to Bankruptcy Code Section 523(a)(4). Under this section, a debt is nondischargeable if it is a debt "for fraud or defalcation while acting in a fiduciary capacity, embezzlement, or larceny." 11 U.S.C. § 523(a)(4). In his complaint and upon summary judgment, Greer does not address fraud, defalcation, or embezzlement but, instead, asserts that the State Court Judgment meets the elements for "larceny" under Section 523(a)(4). This Court's review, however, leads to the conclusion that those requirements have not been met.
This Court begins with the meaning of the term "larceny" which is not defined within the Bankruptcy Code. Federal law provides the appropriate definition of larceny for Section 523(a)(4) purposes. Baker v. Wentland (In re Wentland) , 410 B.R. 585, 596 (Bankr. N.D. Ohio 2009). Under federal common law, larceny is defined as "the fraudulent and wrongful taking and carrying away of the property of another with intent to convert such property to the taker's use without the consent of the owner." Wentland , 410 B.R. at 596 ; Williams v. Noblit (In re Noblit) , 327 B.R. 307, 311 (Bankr. E.D. Mich. 2005).
Significantly, larceny requires that the original taking of the property be unlawful. Wentland , 410 B.R. at 596-97 ; Noblit , 327 B.R. at 311 ; Chapman v. Pomainville (In re Pomainville) , 254 B.R. 699, 705 (Bankr. S.D. Ohio 2000). Consequently, when property converted by the debtor originally comes into the debtor's possession with the express consent or authorization of the creditor, such as through a lease or security agreement, the debtor does not commit larceny. See, e.g. , CAGO, Inc. v. Slade (In re Slade) , 471 B.R. 626, 649 (Bankr. D. N.M. 2012) (noting that a debtor did not commit larceny by misappropriating *774 a trackhoe leased to him by the creditor because the debtor came into its possession with the creditor's express consent); Pomainville , 254 B.R. at 705 (concluding that larceny was inapplicable to the debtor's misappropriation of insurance proceeds for his personal use when there was no proof that the debtor's initial possession of the proceeds was unlawful); American General Finance, Inc. v. Heath (In re Heath) , 114 B.R. 310, 311-12 (Bankr. N.D. Ga. 1990) (holding that a debtor does not commit larceny by disposing of automobiles subject to the creditor's security interest when the debtor was in lawful possession of the automobiles).
Following the state court trial in July of 2013, the Magistrate concluded that Greer had an oral lease agreement with the Bruces to use the Stephens Road Property as a "laydown yard" for Greer's equipment, machinery and scrap. Pursuant to this oral lease, the Debtor lawfully came into possession of Greer's property. Because the Debtor's original possession of Greer's property was lawful, the Debtor cannot be found to have committed larceny based on the findings and conclusions in the State Court Judgment and Greer's motion for summary judgment is, therefore, denied with respect to his Section 523(a)(4) claim.
B. Section 523(a)(6) : Willful and Malicious Injury
Alternatively, Greer contends that the findings adopted in the State Court Judgment establish the nondischargeability of the judgment debt pursuant to Bankruptcy Code Section 523(a)(6). This section excepts from discharge any debt for a "willful and malicious injury by the debtor to another entity or the property of another entity[.]" 11 U.S.C. § 523(a)(6).
Although no precise standard for a "willful and malicious injury" appears in the Bankruptcy Code, the standard has been subject to thorough examination by the courts. In the case of Kawaauhau v. Geiger , the Supreme Court clarified that in order for an injury to be "willful," a debtor's acts must be both intentional and committed with the intent to cause injury. 523 U.S. 57, 61-63, 118 S.Ct. 974, 140 L.Ed.2d 90 (1998). The Sixth Circuit further clarified the standard by holding that the debtor must be found to have desired to cause the harm or had knowledge that the harm was substantially certain to result from the debtor's actions. Markowitz , 190 F.3d at 464-65.
In addition to being willful, the injury must be "malicious."[3] Id. at 463 *775 (noting that the plain language of the statute supports that the injury must be both willful and malicious and that the "absence of one creates a dischargeable debt"); Dardinger v. Dardinger (In re Dardinger) , 566 B.R. 481, 499 (Bankr. S.D. Ohio 2017) (noting that willfulness and malice may often occur in the same set of facts but that each is a distinct element in the Section 523(a)(6) analysis). A person is deemed to act maliciously within the meaning of Section 523(a)(6) when the person acts "in conscious disregard of his duties or without just cause or excuse." Gonzalez v. Moffitt (In re Moffitt) , 252 B.R. 916, 923 (6th Cir. BAP 2000) ; Dardinger , 566 B.R. at 499.
Greer argues that the Magistrate's Decision finding the Debtor and his father jointly and severally liable to Greer for the "intentional tort of conversion" of Greer's property combined with the award of punitive damages meets the requirements of Section 523(a)(6).
Conversion is among the type of intentional tort that is subject to nondischargeability pursuant to Section 523(a)(6). Musilli v. Droomers (In re Musilli) , 379 Fed. App'x 494, 498 (6th Cir. 2010) ; Steier v. Best (In re Best) , 109 Fed. App'x 1, 5 (6th Cir. 2004) (noting that "[d]ebts arising out of these types of misconduct satisfy the willful and malicious injury standard: intentional infliction of emotional distress, malicious prosecution, conversion, assault, false arrest, intentional libel, and deliberately vandalizing the creditor's premises."). However, under Ohio law, the tort of conversion "is a general intent offense" requiring "only the act, but not necessarily the injury, be intentional." Kimco Leasing Co. v. Wilson (In re Wilson) , 383 B.R. 678, 681 (Bankr. N.D. Ohio 2007).[4] Consequently, the Debtor's liability for the tort of conversion, alone, does not establish nondischargeability pursuant to Section 523(a)(6). Id. ; CMEA Title Agency, Inc. v. Little (In re Little) , 335 B.R. 376, 386-87 (Bankr. N.D. Ohio 2005). As such, a court must also "consider the circumstances surrounding the conversion to determine if it falls within the scope of this exception." Becton, Dickinson and Co. v. Sterling (In re Sterling) , 479 B.R. 444, 453 (Bankr. E.D. Mich. 2012) (citing Davis v. Aetna Acceptance Co. , 293 U.S. 328, 332, 55 S.Ct. 151, 79 L.Ed. 393 (1934) ).
In deciding to hold the Debtor liable for conversion, the Magistrate's findings do not establish that the Debtor committed a willful injury as is required by Section 523(a)(6). The Magistrate's Decision acknowledges the Debtor's testimony that the Debtor did not know who the materials belonged to when he hired Writesel to haul the materials away, but that the Debtor assumed they belonged to his father, Earl Bruce. From this testimony, the Magistrate concluded that the Debtor "ultimately hired Writesel to do the job without *776 ever knowing who the material belonged to" and that this "[c]onscious disregard for who actually owned the equipment and machinery is not a defense for [the Debtor's] actions." [Docket Number 22, Ex. A, Magistrate's Decision, p. 6]. The Magistrate may appropriately have concluded that these facts do not constitute a defense to conversion under state law. See e.g. , Fulks v. Fulks , 95 Ohio App. 515, 121 N.E.2d 180, 182 (1953) (noting that misapprehension or mistake is not a defense to a conversion action). However, these same facts are insufficient to establish that the Debtor hired Writesel with the desire to cause Greer harm or with knowledge that harm was substantially certain to result to Greer as is necessary to establish a "willful" injury under Section 523(a)(6). See Markowitz , 190 F.3d at 464.
Nor does the Magistrate's Decision establish that the Debtor's conversion of Greer's property was "malicious" for purposes of Section 523(a)(6). Greer seeks to equate the award of punitive damages in the State Court Judgment to the malice requirement of Section 523(a)(6). The Ohio Supreme Court has declared that punitive damages are available upon a finding of actual malice. Calmes v. Goodyear Tire & Rubber Co. , 61 Ohio St.3d 470, 575 N.E.2d 416, 419 (1991) ; Fisher v. Barker , 159 Ohio App.3d 745, 825 N.E.2d 244, 248 (2005). For these purposes, actual malice is defined as: "(1) that state of mind under which a person's conduct is characterized by hatred, ill will or a spirit of revenge, or (2) a conscious disregard for the rights and safety of other persons that has a great probability of causing substantial harm." Calmes , 575 N.E.2d at 419 (emphasis in original); Preston v. Murty , 32 Ohio St.3d 334, 512 N.E.2d 1174, 1176 (1987).
In many instances, an award of punitive damages under Ohio law will establish malice for purposes of Section 523(a)(6). Compare Dardinger , 566 B.R. at 502-03 (inferring malice from a state court award of punitive damages in a case involving assault, battery, intrusion upon seclusion and intentional infliction of emotional distress where the debtor took illicit videos of his teenage step-daughter in various stages of undress), and Hoewischer v. White (In re White) , 551 B.R. 814, 827 (Bankr. S.D. Ohio 2016) (finding malice based on state court award of punitive damages based on intentional infliction of emotional distress where debtor posted nude photos of his ex-girlfriend on a "revenge porn" website), and Spring Works, Inc. v. Sarff (In re Sarff) , 242 B.R. 620, 627-28 (6th Cir. BAP 2000) (concluding that the state court's award of punitive damages based on the debtor's contempt toward the president of the target company and continuing violation of an injunction prohibiting the debtor from competing with and disclosing trade secrets of the target company warrants an inference of malice), with Schmidt v. Panos (In re Panos) , 573 B.R. 723, 739 (Bankr. S.D. Ohio 2017) (finding an award of punitive damages in an action involving fraud was insufficient to establish malice for purposes of Section 523(a)(6) ). In this case, however, it does not. In the portion of the decision addressing punitive damages, the Magistrate discusses the Debtor's actions together with those of his father, Earl Bruce, and their "agent," Writesel, making it difficult to know whose conduct formed the basis for the punitive damages award. The Magistrate states that "both Earl and [the Debtor] knowingly authorized and in fact, hired Writesel to haul away [Greer]'s belongings." [Docket Number 22, Ex. A, Magistrate's Decision, p. 8]. However, this statement appears to conflict with the Magistrate's earlier conclusion that the Debtor did not know who the materials belonged to when he hired Writesel to haul them away.
*777 Of further concern is the Magistrate's focus on the misconduct of Writesel as the "agent." Noting the evidence that Writesel raised his middle finger at Greer while hauling the materials away, the Magistrate concluded that this behavior "unquestionably demonstrates malice and insult towards [Greer]" and is "adequate grounds to award punitive damages due to the egregious nature of Writesel's actions on behalf of [the Debtor and Earl Bruce]." [Id. , p. 8].
While the Magistrate may not have been required to pinpoint whose knowledge and misconduct formed the basis for the punitive damages award under state law principles,[5] such specificity is required when determining nondischargeability pursuant to Section 523(a)(6). Under this provision, the willful and malicious injury has to be an injury "by the debtor to another entity or to the property of another entity[.]" 11 U.S.C. § 523(a)(6) (emphasis added); Hamilton v. Nolan (In re Nolan) , 220 B.R. 727, 732 (Bankr. D.C. 1998) (noting that the plain meaning of this language requires that the debtor be the one whose willful and malicious conduct caused the injury). Consequently, the willful and malicious conduct of others, even if the debtor may be legally responsible for that conduct under state law, cannot be imputed to the debtor for purposes of Section 523(a)(6). First Citizen's Nat'l Bank v. Murray (In re Murray) , 2013 Bankr. LEXIS 5737, at *11-22 (Bankr. W.D. Tenn., Aug. 20, 2013) ("The majority of the time, courts have universally held that a person's willful and malicious actions cannot be imputed to another person for the purpose of holding that debt nondischargeable under § 523(a)(6)." (internal quotation marks and citation omitted) ); Nolan , 220 B.R. at 732 ("This court agrees with the majority who have ruled that nondischargeability of a debt under § 523(a)(6) cannot be grounded on the imputation to the debtor of acts of another."); Yelton v. Eggers (In re Eggers) , 51 B.R. 452, 453-54 (Bankr. E.D. Tenn. 1985) (refusing to impute the debtor's liability for a fatal car accident to the debtor's mother because she signed an application enabling the debtor to obtain a driver's license where the debtor's license had been revoked prior to the accident and the mother was not in a position to exercise authority or control over the manner in which the debtor was driving), compare with O'Brien v. Sintobin (In re Sintobin) , 253 B.R. 826 (Bankr. N.D. Ohio 2000) (finding debt attributable to vandalism by the debtors' children and their friends nondischargeable under § 523(a)(6) where the debtors were aware of the ongoing vandalism and did not discipline their children or their friends to deter such actions in the future).
In this case, it is unclear from the Magistrate's Decision whether the Debtor is being held liable for his own actions or the knowledge and misconduct of Earl Bruce and Writesel. When the findings related to the conduct of these individuals are excluded, the Magistrate's Decision supports that the Debtor may have done nothing more than to act upon the direction of his father to hire someone to haul away materials from the Stephens Road Property without first checking with his father as to who actually owned the materials. This conduct may be improper under state law, but it is insufficient to establish a "willful and malicious injury" pursuant to Section 523(a)(6).
*778 Because neither the Magistrate's legal and factual findings nor the award of punitive damages establishes that the Debtor committed a "willful and malicious injury" under Section 523(a)(6), the Magistrate's Decision is not entitled to preclusive effect on this claim.[6]
IV. CONCLUSION
Based on the foregoing, this Court concludes that the State Court Judgment is not entitled to preclusive effect pursuant to Bankruptcy Code Sections 523(a)(4) and/or 523(a)(6). Accordingly, Creditor/Plaintiff Robert Greer's Motion for Partial Summary Judgment [Docket Number 22] is denied. Plaintiff Robert Greer's claims to except the State Court Judgment debt from discharge shall proceed to trial.
SO ORDERED.

In the text of this decision, use of the terms "Bankruptcy Code Section" or "Section" are references to provisions of Title 11 of the United States Code.

Earl Bruce maintained that Greer had permission to use the adjacent Whitewater Property but not the Stephens Road Property [Id. , pp. 3-4].

Post-Markowitz , at least one court in the Sixth Circuit questions the propriety of continuing to impose separate tests for "willful" and "malicious." Marketgraphics Research Group, Inc. v. Berge , 245 F.Supp.3d 973, 976-77 (M.D. Tenn. 2017). Instead, the court concludes that Geiger imposes a unitary standard for a "willful and malicious injury" and notes that at least one other Circuit follows this approach. Id. at 977 (citing Miller v. J.D. Abrams Inc. (In re Miller) , 156 F.3d 598, 606 (5th Cir. 1998) ). The court in Marketgraphics suggests that the test has evolved since Markowitz so that, in later cases, the Sixth Circuit appears to apply a unitary test rather than considering willful and malicious as separate elements. Id. (citing, among other examples, Kennedy v. Mustaine (In re Kennedy) , 249 F.3d 576, 580 (6th Cir. 2001) ; Morris v. Brown (In re Brown) , 489 Fed. App'x 890, 895 (6th Cir. 2012) ; and Kowalski v. Romano (In re Romano) , 59 Fed. App'x 709, 715 (6th Cir. 2003) ).
This court agrees that the evolving definitions of "willful" and "malicious" overlap to a large degree. Further, the post-Markowitz Sixth Circuit case law cited in Marketgraphics does not specifically discuss "malicious" as a separate concept from "willful." What is less clear, however, is whether this Sixth Circuit case law has modified the standard or, rather, the Sixth Circuit has been focused on the "willful" element for purposes of particular appeals. See Kennedy , 249 F.3d at 581Brown , 489 Fed. App'x at 895-96 ; Romano , 59 Fed. App'x at 715. Indeed, none of the cases cited in Marketgraphics expressly overrules Markowitz or its clear holding that "willful" and "malicious" are separate and distinct elements and that the "absence of one creates a dischargeable debt." Markowitz , 190 F.3d at 463. Given that Markowitz has never been overruled or explicitly modified by the Sixth Circuit, this Court is obligated to continue to treat "willful" and "malicious" as separate elements for Section 523(a)(6) purposes.

Under Ohio law, conversion is defined as "the wrongful exercise of dominion over property to the exclusion of the rights of the owner, or withholding it from his possession under a claim inconsistent with his rights." Joyce v. General Motors Corp. , 49 Ohio St.3d 93, 551 N.E.2d 172, 175 (1990) ; Dice v. White Family Cos., Inc. , 173 Ohio App.3d 472, 878 N.E.2d 1105, 1108-09 (2007). To prove conversion under Ohio law, a plaintiff must demonstrate: 1) plaintiff's ownership or right to possession of the property at the time of the conversion; 2) defendant's conversion by a wrongful act or disposition of plaintiff's property rights; and 3) damages. Dice , 878 N.E.2d at 1109.

See Estate of Robert L. Beavers v. Knapp , 175 Ohio App.3d 758, 889 N.E.2d 181, 198-201 (2008) (collecting cases where punitive damages have been awarded against an employer/principal for the actionable conduct of an employee/agent acting within the scope of employment without any further demonstration of authorization, participation or ratification by the employer).

Because this Court denies Greer's motion for summary judgment on the basis of the Magistrate's Decision being insufficient to establish Greer's claims under Bankruptcy Code Sections 523(a)(4) and (a)(6), this Court need not consider or address the relevance of the evidentiary materials provided by the Debtor in response to Greer's motion for summary judgment. However, to the extent the Debtor provides the materials to call into question determinations made in the state court, this Court emphasizes that it has no jurisdiction to entertain such an appellate review or collateral attack of the factual findings and legal conclusions made by the Magistrate and adopted in the Final Judgment Entry nor may this court re-calculate the proper amount of the judgment debt. See Snow v. Brown (In re Brown) , 263 B.R. 832, 834 (Bankr. S.D. Ohio 2000) (noting that while the debtor complained that the state court trial was rife with errors, the bankruptcy court had no jurisdiction to entertain appellate review of the state court judgment). The sole issue for this Court to determine with respect to the judgment debt is whether it is excepted from discharge in the Debtor's bankruptcy case.